Brinkerhoee, C. J.
In regard to the facts of this case, the ■counsel for the parties respectively do not disagree; and the above is a statement of them, so far as is necessary to show the questions passed upon by the court, and decisive of the case. Many other ■questions are made in argument, and are discussed with much re■search and' ability by counsel, but which, in the view we take of ■the case, it is not necessary for us now either to consider or decide.
The plaintiff, William Jeffers, notwithstanding he, by his deed .duly executed, “remised, released, and forever quit-claimed” to his brother Henry, in his lifetime, “his heirs and assigns forever,” all *83 bis “right, title, interest, and estate, legal and equitable,” in and to the premises in question, now claims the same under the provisions of his father’s will, against the defendant, who holds under a regular conveyance subsequently made by Henry.
It is very clear from the terms of this deed of release and quitclaim, that the plaintiff intended to, and did, convey to his brother Henry, whatever interest he had in the premises, contingent or -otherwise, which he had, and which could be, in law, the subject •of release or quit-claim. At this time, the plaintiff "William, Henry, and their mother, Joannah, were all living. And the question now arises:
1. What was then the interest of William and Henry respectively in these premises ?
The language of the will is: “After my debts, etc., have *all been paid, I give and bequeath all the rest and residue of my property to my beloved wife, Joannah Jeffers, during her natural life, including my real, personal, and mixed property, of ■every kind whatsoever. After the decease of my wife, I give and bequeath all my property, real, personal, or mixed, of every kind, to my two sons, William and Henry Jeffers, to them and their heirs and assigns forever. It is my will, that if either of my said sons, William or Henry, shall happen to die before my beloved wife Joannah, then it is my desire that the survivor, at her decease, shall have the whole of my property, to him and his heirs and assigns forever.”
We are of opinion that, by this language, a remainder in fee (after the determination of the life-estate of the mother) was vested immediately in William and Henry, in equal moieties of the premises in common; such vested remainder, however, being subject to be divested upon the contingency expressed, to wit, the death of either during the life of the mother.
In thus holding, we are sustained by the case of Harrison v. Foreman, 5 Ves. Jr. 207. In that case, the testator bequeathed an annuity of forty pounds to Sarah Barnes for life, and “from and .after her decease,” to Peter Stallard and Susannah Snell Stallard, in equal moieties; and in case of the decease of either of them during the life of the said Sarah Barnes, then to the survivor of them at her decease. Peter and Susannah Snell Stallard both died before Sarah Barnes; so that the contingency on which survivorship depended never occurred. The bequest was thereupon claimed by *84 the administrator of Peter and Susannah, on the one hand, and by the residuary legatees, on the other. The whole case depended on this sole question, whether there was a vested interest in Peter and Susannah or not? The master of the rolls, Sir Richard Pepper Arden, said: “No words can- be more clear for a vested interest. . . . . There is a vested interest; and the- contingency, upon *wkieh it is to be divested, never happened; the vested interest therefore remains, as if that contingency had never been annexed to it.” He further remarked,' “I could illustrate the principle by putting the ease of a real estate, instead of these annuities, given after the death of a tenant for life to these two persons and their heirs, as tenants in common; but, if either of them dies before the death of the tenant for life, then to the survivor and his-heirs.” He thus puts the very case now before us, and says: “ Putting it so, there is no possibility of doubt it would have been a vested interest in them, to be divested upon a contingency which did not take place.”
See also Belk v. Slack, 15 Eng. Ch. (1 Keen,) 238, and Hutchinson v. Stephens, Ib. 241, and 1 Jarman on Wills, 751.
Here, then, was a vested remainder in William and Henry in-these premises, in equal and undivided moieties in common—subject, however, to be divested on the happening of a contingency: In each there was a present interest, a vested remainder ; and in-each there was a possibility of survivorship to the whole premises, depending on a contingency which did afterward actually happen in favor of the plaintiff, William.
This view of the question is objected to, on the ground that the will here makes no provision in case both. William and Henry should die during the life of their mother. The objection was as-applicable in the case of Harrison v. Foreman as it is in this case; and we think it entitled to but little weight. It is a casus omissus; a contingency, though a very possible one, not foreseen by the-testator; a thing than which hardly anything is more common.
Each of them having thus a common and undivided present interest in the land, also a possibility-of future interest in contingency, the next question is—
2. Was this possibility releasable, in law, by the one to the other, and did it pass by the deed of release and quitclaim from William, to Henry?
*We suppose that no principle is better settled than this,. *85 -that a bare expectancy, or mere possibility, is neither assignable nor releasable. Was this contingent interest depending on survivorship, in William, such mere expectancy?. Smith,in his “view of executory interests,” 2 Fearne, 22, thus defines an expectancy: “ An expectancy, or chance, is a mere hope unfounded in any limitation, provision, trust, or legal act whatever; such as the hope which an heir apparent has of succeeding to the ancestor’s estate. This is sometimes said to be a bare or mere possibility, and at other times less than a possibility. It is a possibility in the popular sense of the term. But it is less than a possibility in the specific sense' of the term “possibility;” because, in the case of a mere exj>ect.ancy, nothing has been done to create an obligation in any event; and where there is no obligation, there can be no right, for right and obligation are correlative terms.
This interest of William, then, was not a mere expectancy. It had a foundation in the “ provision,” the “ legal act,” of his father’s Will, and was not a mere hope, such as “ an heir apparent has of succeeding to the ancestor’s estate.” In the language employed in Lampett’s Case, 10 Co. 50b, it has “ a foundation and original .inception of right.” It seems to be the settled doctrine of the old books that, at common law, even such a possibility, not being a bare expectancy, but having “ a foundation and original inception of right,” is not assignable to a stranger. Of this doctrine, Lord Hardwicke, in Wright v. Wright, 1 Ves. Sen. 411, says, “the rea•sons of the law not allowing such a disposition are mostly very refined;” and Lord Cowper says, in Thomas v. Freeman, 2 Vern. 563: “ These sort of notions would not have prevailed now. But, however, the law must be taken as it is. There was a wise reason in the law’s not allowing a right to sue to be assigned; that it tended 'to champerty and maintenance to pass debts into the hands of the powerful to oppress the lower people.”
But, however this may be, the Case before us is not that *of an assignment to a stranger, but of release to a party in interest. Is ■such possibility, having “ a foundation and original inception of right,” releasable to a party in interest? We are of opinion that it is—not only because it is'hard to perceive, on any rational principle, why parties who have united in themselves every possible interest ought not to be able to render the same available by giving certainty to interests which would otherwise be unavailable by reason of their uncertainty, but also because it seems to be in bar *86 mony with principles established by ancient and approved authority.
“ And first was observed the great wisdom and policy of the sages and founders of our law, who have provided that no possibility, right, title, nor thing in action, shall be granted or assigned to strangers, for that would be the occasion of multiplying of contentions and suits, of great oppression of the people, and chiefly of terre-tenants, and the subversion of the due and equal administration of justice. But all rights, titles, and actions may, by the wisdom and policy of the law, be released to the terre-tenant, for the same-reason, of his repose and quiet, and for avoiding of contentions and suits, and that every one may live in his vocation in peace and' plenty.” Lampett’s case, 10 Co. 48a. And in Arthur v. Rokenham, 11 Mod. 152, Chief Justice Trevor says : “ Yet the law has allowed releases of rights, which are in the nature only of possibilities, that a man may release to him who has the possession a possible right only, though it does not allow him to transfer or convey away to a stranger such a right; and that is the reason why the law allows a man to release an executory interest in a term which he-has devised to him, and is in the nature only of a possibility; but yet he can not assign it-away to a third person, though he may, as I said before, release this right to the possessor of the land by way of extinguishment.”
Now-Henry Jeffers, at the time of the release to him by William,. *was not the terre-tenant, or the actual “ possessor ” of the 1 and; and this release, therefore, does not come within the precise ferns-of what is above laid down as to the party to whom releases of a possibility, not a bare expectancy, may be made. But, whil e it is not within the terms, it is clearly within the reason on which those rules are based; for, although Henry was not the actual “possessor ” of the land, yet he had a large and valuable vested interest in it, and the release operated by way of “ relinquishment,” and tended to “repose and quiet.” But in Co. Litt. 267a, the doctrinéis carried still further, and it is there said, that “ a release is good, to him in the remainder, albeit bee hath nothing in the freehold in possession, because hee hath an estate in him, as hath beene said.”' And this seems to cover the precise question before us, and to be fairly conclusive of it.
But it is strongly urged by counsel for plaintiff, that the case of Pelletrean v. Jackson, 11 Wend. 110, and Jackson v. Varick, 13 *87 Wend. 178, are in point, and if received as authority, conclusive against the view which we have taken of this question. Wo do not think so. Eminent jurists in New York were by no means unanimous as to the correctness of the decision in those cases, which involved the same question ; and the latter was finally decided in the court of errors by a divided court, and against the opinion of the chancellor.
It will be noticed that the reason on which'the old doctrine, that possibilities, not mere expectancies, are not assignable to a stranger, proceeds, is this only, that it tends to champerty and maintenance, and to the harassing of the poor by the powerful.
Now, in a state of society presenting strongly-marked classes, with great inequality of civil rights, and of social rank and consequent influence, and where legal proceedings were very expensive to parties litigant, the rule may have been wise and salutary -r but in this age and country, of complete civil and comparative social equality, and of *cheap justice, where champerty and maintenance are obsolete offenses, queere—has not the reason of the rule ceased ? And ought not the rule itself to disappear with the reason on which it rests ?
But, be this as it may, and without either adopting or rejecting the authority of those New York cases, it is sufficient to say, that there was not the case of a release of a possibility dependent on survivorship to the other party in interest, but of an assignment of such possibility to a stranger. Those cases and the one at bar are not therefore analogous; the questions are quite dissimilar, and the distinction between them is clearly recognized in the books; and so far as observations made in those cases tend to confound the two questions, and to apply the same rule to both, they may be properly regarded as obiter dicta.
We are of opinion that, on the state of facts presented in the case, the plaintiff is not entitled to recover, and that the motion for a new trial must prevail.
New trial ordered, and cause remanded,New trial ordered, and cause remanded,†
Scott, Suture, Peck, and Gholson, JJ., concurred.

NoTE by the Chief Justice.—Since this opinion was written and delivered, I have met with the case of Miller and wife v. Emans, recently decided by the New York court of appeals, which is entirely analogous to this case, and is de« cided in the same way. 19 N. Y. 384.