THEODOCIA A. J. E. WILLIAMS

*v.*

EMMA ESTEN.

*Opinion filed April 17, 1899.*

1. DEEDS—*deed construed as a release and not merely a quit-claim.* A deed reciting that the grantors "have remised, released, sold, conveyed and quit-claimed, and by these premises do remise, release, sell, convey and quit-claim, unto the party of the second part, his heirs and assigns, forever, all the right, title, interest, claim," etc., is not merely a quit-claim deed but a deed of release also.

2. REMAINDERS—*contingent remainder will pass to life tenant by release deed.* While a quit-claim deed from one having a contingent remainder to a stranger will not pass the contingent interest, yet a deed of release from the remainder-man to the life tenant in possession will vest such contingent interest in the grantee and enlarge his estate into a fee.

APPEAL from the Circuit Court of Logan county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

This was an action of ejectment brought by appellant, against appellee, to recover possession of the following lands: The west half of the north-east quarter of section 2, except about 15.59 acres in the plat of Thomas

Esten of the village of Lawndale, in township 20; also all that part of the south half of the south-west quarter lying west of the Chicago and Alton railroad track, in section 36, township 21, north, range 2, west of the third principal meridian, Logan county, Illinois. The defendant pleaded not guilty, and the case was tried before the court, a jury being waived. The finding and judgment were for defendant, and plaintiff prosecutes this appeal.

Both parties claimed through Thomas Esten, deceased, as a common source of title. The said Thomas Esten by his last will devised the land first described in the declaration to his widow, Losana Esten, for and during her natural life, and after her death to go to his son, Aurelian, and his daughter, Theodocia Alice Jenkins Esten, the appellant. By the third clause he gave to the said daughter lots Nos. 1, 3, 4, 5 and 6, in block 7, in Lawndale, with the buildings thereon; also the north-west quarter of the south-east quarter of section 33, township 21, range 2, west of the third principal meridian. By the fourth clause he bequeathed to his son, Aurelian Esten, all his property, real and personal, not devised to his wife and daughter. The fifth clause is in the following language: "In case of the death of the said Aurelian Esten without heirs born unto him, all of the property devised unto him shall be devised and given unto the said Theodocia Alice Jenkins Esten, or in case of the death of the said Theodocia Alice Jenkins Esten without heirs born unto her, the property devised unto her shall be devised and given unto the said Aurelian Esten." By a codicil to his will he provided that the daughter should receive from the son, who was named as his executor, the sum of $2500 out of his estate in lieu of her share of the property given to his wife, and at her death to the son and daughter, in the second division of his will stating: "So that all the property named in the second division of said will, at the decease of my wife shall go to Aurelian Esten."

Upon the death of his father Aurelian Esten took possession of the lands in controversy and remained in possession of the same during his lifetime. The daughter intermarried with one Samuel R. Williams, and on June 27, 1876, in consideration of $450, executed an instrument in writing to her brother, Aurelian Esten, purporting to convey or release to him "all the right, title, interest, claim and demand which she had in and to certain lots and lands," including both tracts described in her declaration in this action. On the 29th day of June, 1876, in consideration of one dollar, the son, Aurelian Esten, quit-claimed and released to her all his right, title and interest in and to the lots and lands devised to her by the third clause of the father's will, as above stated. Aurelian Esten died in February, 1895, "without heirs born unto him," leaving the defendant below, Emma Esten, his widow, to whom he willed all his property, real and personal.

E. C. PERKINS, and BLINN & HARRIS, for appellant:

A contingent remainder is not alienable. *Cassem* v. *Kennedy*, 147 Ill. 660; 2 Lead. Cases on Am. Law of Real Prop. 368; 2 Washburn on Real Prop. 509; *Stephenson* v. *Boody*, 38 N. E. Rep. 331; *Bryant* v. *Stratton*, 101 Ind. 477; 20 Am. & Eng. Ency. of Law, 849; *Kingman* v. *Harmon*, 131 Ill. 161; *Paul* v. *Frierson*, 21 Fla. 529.

A quit-claim deed, under the statutes of this State, does not operate as a release of a contingent remainder. Rev. Stat. chap. 30, sec. 10, p. 309; *Frink* v. *Darst*, 14 Ill. 303; *Bogy* v. *Shoat*, 13 Mo. 366; *McCrokin* v. *Wright*, 14 Johns. 193; *Pelletreau* v. *Jackson*, 11 Wend. 110.

A quit-claim deed does not convey or release an after-acquired title, but conveys only such title as the grantor then had. *Torrence* v. *Shedd*, 112 Ill. 467; *Glover* v. *Condell*, 163 id. 594; *Eastman* v. *Littleton*, 164 id. 130.

A conveyance of all the right, title and interest in lands is certainly sufficient to pass the land itself, if the

party conveying has an estate therein at the time of the conveyance, but it passes no estate which is not then possessed by the party. *Glover* v. *Condell*, 163 Ill. 592.

J. T. & F. M. HOBLIT, and OSCAR ALLEN, for appellee:

A release by a remainder-man to the *terre* tenant or party having a freehold in possession releases all the grantor's rights, even though they be only contingent or merely possibilities. 4 Kent's Com. (13th ed.) 262; *Wright* v. *Wright*, 1 Ves. Sr. 411; 5 Comyn's Dig. title "Release;" 3 Cruise's Dig. (Am. ed.) chap. 8, sec. 1; 1 Washburn on Real Prop. (5th ed.) p. 96, par. 92; 2 Lead. Cases on Am. Law of Real Prop. 372; *Miller* v. *Emans*, 19 N.Y. 385; *Smith* v. *Pendell*, 19 Conn. 107; *Jeffers* v. *Lampson*, 10 Ohio St. 107; *Bartholomew* v. *Murry*, 23 Atl. Rep. 604.

The ancient release and modern quit-claim are identical. Warvelle on Abstracts, p. 201, par. 14.

Where a contingent remainder is coupled with an interest, or where the person is ascertained, such a contingent interest will pass by release generally, even to strangers, and much more to one in possession claiming title. 4 Kent's Com. (13th ed.) 261, 262; 2 Washburn on Real Prop. (5th ed.) 611, par. 4.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This case was before us at a former term, and upon the hearing we affirmed the judgment of the circuit court, but upon application for a rehearing, in view of the importance of the question involved, we granted the same. Since granting a rehearing we have carefully considered the case again, but have not been able to reach a different conclusion from that arrived at on the last hearing.

The death of the widow of Thomas Esten does not affirmatively appear from the evidence as set out in the record, but that fact has been assumed by counsel in the argument and not denied. We shall therefore treat the

case as though the death of the widow was established and her life estate terminated.

Under the provisions of the will of Thomas Esten, deceased, Aurelian Esten, the son of the testator, took a freehold estate in the lands devised to him. He became vested with the fee, determinable upon his death without children. During the life of Aurelian Esten the interest of appellant in the lands devised to him was contingent upon her surviving him and upon his death without children or "heirs born unto him." As both of these contingencies happened, the appellant would have become the owner of the premises in fee, if, during the lifetime of Aurelian Esten, she had done nothing to divest herself of her interest in the premises. It appears, however, that on June 27, 1876, she executed a release deed of her interest to Aurelian, who was then in the possession of the premises, and the real question presented by the record is, what effect is to be given to that instrument. It is claimed, on the one hand, that the rights of the appellant were in no manner affected by that instrument, while, on the other hand, it is insisted that all of her right, title and interest in the premises, both present and contingent, was divested upon the execution and delivery of the instrument.

It may be conceded that a contingent remainder will not pass by a quit-claim deed made to a stranger to the title, and it is also true that a quit-claim deed executed by a person who has no interest in the land will not vest a title subsequently acquired by the grantor. The law on this subject was settled in *Frink* v. *Darst*, 14 Ill. 304, and so far as we are advised it has never been departed from in this State. Where, however, a party conveys lands with covenants of warranty he cannot be allowed to set up against his grantee, or those claiming under him, a subsequently acquired title, but such title will inure, by way of estoppel, to the benefit of the grantee, his heirs and assigns. (*Holbrook* v. *Debo*, 99 Ill. 372.) The

doctrine, however, of *Frink* v. *Darst* is not disputed or denied by the defendant, nor is it claimed that an after acquired title in appellant inured to the benefit of the defendant, but the position of the defendant is, that a release deed executed by a remainder-man to a life tenant in possession conveys the contingent interest to the life tenant, thereby enlarging the estate of the life tenant to a fee simple title.

Section 10 of chapter 30 of our statutes, entitled "Conveyances," which was in force when the deed in question was made, provides that quit-claim deeds may be, in substance, in the following form:

"The grantor,..........for the consideration........convey and quit-claim to............all interest in the following described real estate,.................. situated in the county of........in the State of Illinois.

"Dated................          A. B. [L. s.]"

The section then declares: "Every deed in substance in the form prescribed in this section, when otherwise duly executed, shall be deemed and held a good and sufficient conveyance, release and quit-claim to the grantee, his heirs and assigns, in fee, of all the then existing legal or equitable rights of the grantor in the premises therein described, but shall not extend to after-acquired title unless words are added expressing such intention."

The granting clause of the deed in question is: "Have remised, released, sold, conveyed and quit-claimed, and by these premises do remise, release, sell, convey and quit-claim, unto the said party of the second part, his heirs and assigns forever, all the right, title, interest, claim and demand which said parties of the first part have in and to the following described lots, pieces or parcels of land, situated in the county of Logan and State of Illinois, and known and described as follows, to-wit:" Then follow a description of the land and the *habendum:* "To have and hold the same, together with all and singular the appurtenances and privileges thereunto belong-

ing or in anywise thereunto appertaining, and all the estate, right, title, interest and claim of the said party of the first part, either in law or equity, to the proper use, benefit and behoof of the said party of the second part, his heirs and assigns forever."

It will be observed that the deed in question is not only a quit-claim deed, as prescribed by the form laid down in the statute for an instrument of that character, but it is also a release deed,—in other words, it is both a quit-claim and a release deed. The statute has not in terms declared when and under what circumstances a release deed shall be given or what shall be its effect when executed by a remainder-man to a life tenant in possession, and in the absence of such declaration resort may properly be had to the common law. In Williams on Real Property, (p. 422,) in speaking of a contingent remainder, after saying that it could not be conveyed to another by deed of grant, it is said: "A fine alone, before fines were abolished, could effectively have barred a contingent remainder. It might, however, have been released,—that is to say, B might, by deed of release, have given up his interest for the benefit of the reversioner, in the same manner as if the contingent remainder to him and his heirs had never been limited, for the law, whilst it tolerated conditions of re-entry and contingent remainders, always gladly permitted such rights to be got rid of by release, for the sake of preserving unimpaired such vested estates as might happen to be subsisting." Washburn on Real Property (vol. 2, p. 591,) says: "At common law, before the contingency happens, contingent remainders cannot be conveyed except by way of estoppel, though they are assignable in equity, since, theoretically, such a remainder is not an estate but a mere chance of having one. But where the person is ascertained who is to take the remainder, if it becomes vested and he dies, it will pass to his heirs or it may be devised by him. It might always have been released by him to the re-

versioner." (See, also, p. 562.) In Fearne on Executory Devises it is also laid down (vol. 2, p. 58,) that it might be released to the reversioner. See, also, 4 Kent's Com. 261.

*Smith* v. *Pendell*, 19 Conn. 107, is a case directly in point. Smith was the owner of certain real estate which he devised as follows: "To my beloved grand-daughter, Elizabeth Smith, (afterwards wife of William Pendell,) I do give all the remainder of my lands and estate, hoping she may live to enjoy the same; but if the said Elizabeth should die leaving no natural heirs, my will is that the same shall go to my said daughter-in-law, Hannah Smith, mother of said Elizabeth." After the death of the testator Elizabeth entered into the possession of the property, and while so in possession Hannah Smith and her husband executed and delivered to her a quit-claim deed of the property, dated October 26, 1841. Elizabeth died June 1, 1842, without children, and devised the property to her husband, William Pendell. . In an action of ejectment brought by Hannah Smith to recover the property the court held that the quit-claim deed of October 26, 1841, passed the contingent remainder. In the decision of the case it was among other things said: "Although by the common law neither a mere possibility nor a chose in action can be assigned, by deed, to a stranger, yet actual rights, though but contingent, and especially contingent remainders, may be released." So in *Miller* v. *Emans*, 19 N. Y. 384, where a devise, which took effect in 1810, to three sons and four daughters, of real estate, in equal shares, with the provision that if either should die without lawful issue his or her share should be divided among the survivors, it was held that the future contingent interest of the devisees, severally, held by one living, was not a mere naked possibility but passed by release from some of them to the others.

Under the authorities cited we regard the law as settled that while a quit-claim deed made by a person possessed of a contingent remainder to a stranger would not

pass the contingent interest, yet a release deed like the one in question, executed by a remainder-man to the life tenant in possession, will vest in the life tenant the contingent interest of the grantor.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*