THOMAS McDONALD et al., Appellants, v. BAYARD SAVINGS BANK et al.

**Contingent Remainder:** CONVEYANCE OF.   The contingent interest of a remainderman is such a present and existing one as to be susceptible of conveyance by deed.

**Same.**   A contingent remainder may be released to a party in interest, though not to a stranger.

**Limitation of Actions.**   The statute of limitation commences to run from the time when the claimed fraud or mistake might with the exercise of diligence have been discovered.

*Appeal from Guthrie District Court.—Hon. James D. Gamble, Judge.*

Tuesday, April 5, 1904.

Suit in equity to quiet the title to the east half of section 6, township 81 north, of range 32 west of the fifth P. M., in Guthrie county. For some time prior to and at the time of his death, Patrick McDonald, the father of the plaintiffs and the defendant Michael McDonald, was the owner of this land. On the 18th day of August, 1890, he made a will giving all of his estate to his wife, Ann McDonald, for life, and providing therein for his son James after her death, as follows: "My son, James McDonald, to have the northeast quarter of section six (6) township eighty-one (81), range thirty-two (32), in Guthrie County, Iowa. (To be valued at twelve dollars per acre) during the period of his natural life, at his death to revert to his heirs." On the same day he executed a deed conveying the northeast quarter of section 6, in the same township and range, to trustees, to be held for the use and benefit of his son James during his life. At his death it was to revert to his heirs or next of kin. Patrick McDonald died on the 17th day of June, 1891, leaving surviving him his widow, Ann McDonald, and his children, the plaintiffs, the defendant Michael McDonald, and James. In January, 1895, the plaintiffs and the widow, Ann McDonald, executed and delivered to James McDonald a quitclaim deed of all their "right, title and interest in and to" the half section of land involved in this suit. This deed was filed for record and duly recorded in March, 1895. James McDonald and the defendant Alice McDonald were married in 1897. In 1900 James McDonald gave to the defendant Bayard Savings Bank his note for a large amount, which he and his wife, Alice, secured by a mortgage on the land in controversy. This note and the mortgage were afterwards transferred to the defendant the Des Moines National Bank. The widow,

Ann McDonald, died in 1898, and James McDonald died in April, 1901, without issue. He left a will giving the land in question to his wife, Alice.' This suit was begun in November, 1901. There was a decree dismissing the plaintiff's petition, and adjudging the defendant Alice E. McDonald, the widow of James McDonald, to be the owner in fee of the land. On the cross-petition of the bank, the mortgage in question was also foreclosed. The plaintiffs appeal.— *Affirmed.*

*C. W. Hill* and *T. J. Mahoney* for appellants.

*Jno. W. Foster, James Nugent* and *E. R. Sales* for appellees.

SHERWIN, J.—It is suggested by the appellees that the will falls within the rule in *Shelley's Case,* and passed to James McDonald ·an absolute title to the land. This point is not insisted upon, however, and we do not find it neces-·sary to determine it in disposing of the case. The controlling question presented for our determination by the arguments of counsel is the effect of the quitclaim deed executed' and delivered to James McDonald by the widow of the testator, Patrick McDonald, and by the plaintiffs in this suit, his children. This deed covered the whole of the land in controversy, and if it shall be held to have con-

1. CONTINGENT remainder: conveyance of.

veyed, released, or assigned to James McDonald the interest of the grantors therein, whether present or future, vested or contingent, it is an end of the ·case unless it shall be further found that the deed was procured by fraud, and that the plea of fraud is now available to the appellants. The appellants' counsel have discussed at length and ably the question whether the plaintiffs, at the time of executing the quitclaim deed, had an interest in the land which could be conveyed or relin-·quished, contending that they had no such interest, while, ·counsel for appellees contend that section 2914 of the Code· ·obviates all of the "difficulties growing out of the distinctions!

which have been established by judicial constructions between such estates as were alienable and such as were not." Section 2914 is as follows: "Every conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." "An interest" in land is the legal concern of a person in the thing or property, or in the right to some of the benefits or uses from which the property is inseparable. 4 Century Dictionary 3142. It may be conceded for the purposes of this case that the plaintiffs, at the time of making the quitclaim deed, were contingent remaindermen, having only a possibility of ever coming into possession; but, however remote and uncertain this remainder may have been, there was still a possibility, coupled with an interest, which might at some future time ripen into an estate. 1 Tiffany's Real Property, 306. At the time the deed was executed, James McDonald was unmarried and without issue. If he died without issue, and the plaintiffs survived him, they would immediately come into possession of the estate under the provisions of the testator's will. True, this contingency might never happen, but there was a possibility that it might; and this possibility created, in our judgment, a contingent interest or concern in the land which existed at the time of the conveyance. *Godman v. Simmons,* 113 Mo. Sup. 122 (20 S. W. Rep. 972). This interest was not a mere expectancy. In 2 Fearn on Remainders, page 23, an expectancy or chance is defined as "a mere hope, unfounded in any limitation, possession, trust, or legal act whatever —such as the hope which an heir apparent has of succeeding to the ancestor's estate. This is sometimes said to be a bare or mere possibility. It is a possibility in the popular sense of the term. But it is less than a possibility in the specific sense of the term 'possibility.' For it is no right at all, in contemplation of law, even by possibility, because, in the case of a mere expectancy, nothing has been done to create an obligation in any event; and, where there is no obligation, there can be no right, for 'right' and 'obligation' are correlative terms."

The interests of the appellants, then, were not mere expectancies. They had their foundation in the "provision," the "legal act" of the will. *Jeffers v. Lampson*, 10 Ohio St. 101. If this be true, it follows that under this statute every conceivable interest in the estate, "whether present or future, vested or contingent, and however acquired," passed by the deed. In *Nutter, etc., v. Russell*, 3 Metc. (Ky.) 163, there was an application to sell the contingent interest of minors in certain real estate. The sale was ordered and made, and the purchasers thereunder afterwards moved to set it aside on the ground that the court had no jurisdiction to order the sale of the contingent interests of the infant devisees in the land sold, and that the purchasers did not, therefore, acquire a valid and complete title to the land. The statute of Kentucky provided that the real estate of an infant, held by descent or devise or by contract, whether in possession, reversion, or remainder, might be sold by order of court; and the statute further declared that the words "real estate or land" should be construed to mean lands, tenements, and hereditaments, and all rights thereto and interests therein. After discussing the nature of the interest involved in the case, the court said: "In the case cited, of *Jackson v. Waldron*, 13 Wend. 178, a majority of the court decided that an interest such as we have been considering, created by will, was a naked possibility, as it is called, and not assignable or releasable. * * * But it is unnecessary to decide the point, * * * for, according to our own statutes, 'any interest in or claim to real estate may be disposed of by deed or will in writing. Any estate may be made to commence in future by deed in like manner as by will, and any estate which would be good as an executory devise or bequest shall be good if vested by deed.' The effect of this enactment is to obviate at once all the difficulties growing out of the distinction which had been established by judicial construction between such estates as were alienable and such as were not. It will not be doubted, we suppose, that under this statute every con-

ceivable interest in or claim to real estate, whether present or future, vested or contingent, and however acquired, may be disposed of by deed or will." The rule announced in the above case was followed in a similar case, and under a similar statute, by the Court of Appeals of Virginia, in *Faulkner v. Davis et al.,* 18 Grat. 651 (98 Am. Dec. 698); *Young v. Young,* 89 Va. 675 (17 S. E. Rep. 470, 23 L. R. A. 642), was a case where the testator devised land to his daughter for life, with remainder in favor of such of her issue as might be living at her death. She died leaving three sons and one daughter. Before her death, however, one of the sons executed a trust deed for a one-fourth interest in the land. It was held that this son had no vested interest, and nothing more than a mere possibility, at the time of his conveyance, which at common law could not be the subject of assignment or conveyance, but that, under the Virginia statute, which provided that any interest or claim to real estate might be disposed of by deed or will, the deed conveyed his contingent interest, under the rule of *Nutter v. Russell* and *Faulkner v. Davis, supra.* It is true that the Virginia and Kentucky statutes may be said to be enabling statutes, and not precisely like our own statute, but we are unable to discover any substantial difference in principle. They declare that the interests may be conveyed by certain persons, while our own declares that the conveyance, when made by any person, shall pass all interest; thus by implication, at least, declaring that all interests may be conveyed. See, also, *Godman v. Simmons, supra,* and *White v. McPheeters,* 75 Mo. 286.

While we are satisfied that the conclusion which we have reached under the statute is correct, there is still another line 2. SAME. of authorities announcing a rule which commends itself to our judgment as sound, and which we think somewhat analogous to the construction placed upon the statute. It is the rule that a possibility, "not being a bare expectancy, but having a foundation and original inception of right," may be released to a party in interest,

though not to a stranger. *Williams on Real Property,* 277. In *Arthur v. Rockenham,* 11 Mod. 152, Chief Justice Trevor says: "Yet the law has allowed releases of rights which are in the nature only of possibilities, that a man may release to him who has the possession of a possible right only, though it does not allow him to transfer or convey away to a stranger such subject; and that is the reason why the law allows a man to release an executory interest in a term which he has devised to him, and is in the nature only of a possibility, but yet he cannot assign it away to a third person, though he may, as I said before, release this right to the possessor of the land by way of extinguishment." This rule was adopted in *Miller v. Emans,* 19 N. Y. 384, where the will provided that the remainder of the estate should be divided among the survivors of the life tenant, and some of the contingent remaindermen quitclaimed and released their interests to the others, and it was held that such contingent interest—"a mere possibility"— might be released; the court, by Seldon, J., saying: "But the same policy which prohibited the transfer of these contingent rights to strangers tended to encourage their release to parties already possessed of some estate in the premises. By such a merger of rights the sources of litigation were obviously diminished. Accordingly we find another annotator upon Coke and Littleton saying: 'With respect to things that may be released, it is a rule of law that no possibility, right, title, or thing in action shall be granted or assigned to a stranger, on account of the danger of maintenance, and of multiplying contentions and suits. But although a mere possibility cannot be released to a stranger, yet all rights, titles, and actions may be released to the terre tenant, for securing his repose and quiet, and for avoiding contentions and suits.' Thomas' Coke, note F, page 456; Litt., section 446." This has also been the holding in the following cases: *Williams v. Esten,* 179 Ill. 267, (53 N. E. Rep. 562); *Smith v. Pendell* 19 Conn. 107 (48 Am. Dec. 146) *Jeffers v. Lampson, supra.*

In this case James McDonald was in possession of the property, as we understand the record, when the quitclaim deed was made to him; and, such being the case, the deed may be said to have released to him any possibility which the plaintiffs then had, and to have quieted the title in him.

The conclusion which we reach disposes of all questions in the case, except the contention that the deed was procured by fraud or executed by mistake. The evidence does not show either fraud or mistake, but, were one or both shown, this suit, so far as it is based thereon, was fully barred by the statute of limitations. As we have before said, the quitclaim deed was recorded on the 21st day of March, 1895, and knowledge of the fraud, if any there was, must be imputed to the plaintiffs as of that date. The statute begins to run, not from the time when the fraud is actually discovered, but from the time when it might, by the exercise of diligence, have been discovered. *Mather v. Rogers,* 99 Iowa, 292. And the recording of the deed was sufficient notice thereof to set the statute in motion. *Bishop v. Knowles,* 53 Iowa, 268; *Gebhard v. Sattler,* 40 Iowa, 152. In *Taylor v. Taylor,* 118 Iowa, 407, the questions were as to the character of the interest of the judgment debtor in the land, and whether a contingent interest in land was subject to a levy and sale under execution. We held that it was not, because of sections of the statute creating liens upon and defining real estate contemplate a "present, tangible right to or interest in the land; that is, it must be owned by the judgment defendant at the very time the lien is claimed to have attached." There was no question in the case as to whether a contingent interest might be voluntarily conveyed under the statute and our conclusion here in no way contravenes the holding there.

The judgment is AFFIRMED.

3. LIMITATION of actions.