### DICKSON et al. v. NEAL et al. *

(Circuit Court of Appeals, Eighth Circuit. November 19, 1924.)

No. 6641.

**1. Estoppel** ⬖38—**Under Arkansas statute, after-acquired title passes to vendee under warranty deed.**

Under Crawford & Moses' Dig. Ark. § 1498, vendor's after-acquired title passes to vendee under warranty deed, though vendor had no title when he conveyed.

**2. Deeds** ⬖127(1)—**Habendum and granting clauses held to prevail over subsequent provisions, and to grant property for life with remainder in fee to life tenant's children.**

Provision of habendum and granting clauses of deed in trust purporting to grant for life, with remainder to children of life tenant's body forever, prevailed over subsequent provision directing trustee to convey to life tenant with remainder to heirs of her body, and must be construed as grant for life with remainder over in fee to children and hence as creating estate tail.

**3. Estates tail** ⬖2—**Under Arkansas statutes, estate tail automatically converted into estate for life with remainder in fee.**

Under Crawford & Moses' Dig. Ark. § 1499, estate tail is automatically converted into es-

*Rehearing denied March 10, 1925.

tate for life with remainder in fee to life tenant's children.

**4. Remainders ⊖4—Remainder in fee to life tenant's children contingent until children in esse.**

Ordinarily remainder in fee to life tenant's children is contingent until children are in esse, but when they are born remainder becomes vested.

**5. Deeds ⊖133(1)—Rule in Arkansas that remainder under attempt to create fee tail contingent during life tenant's life.**

It is rule in Arkansas that remainder created under Crawford & Moses' Dig. § 1499, on conversion of fee tail into life estate with remainder to life tenant's children, is contingent during life tenant's life and vests only on his death.

**6. Remainders ⊖6—Remainder may be released to life tenant.**

Though at common law, which is in effect in Arkansas, contingent remainder cannot be aliened to stranger, it can be released to tenant in possession, so as to create in him fee-simple estate, by quitclaim deed.

**7. Estoppel ⊖70(2)—Remaindermen failing to set up claim, in action foreclosing mortgage executed by life tenant, estopped from claiming title.**

Where remaindermen, who were sui · juris, were made parties defendant to suit to foreclose mortgages executed by life tenant, but did not set up claim as remaindermen or otherwise, they were estopped to set up such claim many years later against holders of property by mesne conveyances under foreclosure decree.

**8. Infants ⊖112, 113—Bound by consent decree; decree held not to be collaterally attacked.**

Infant was bound, by consent decree compromising suit, to declare that grantee of lands sold under foreclosure held them for benefit of infant and her brother and quieting title in grantee in consideration of payment to infant, and such decree could not be collaterally attacked.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Consolidated action by Mary Ellen Dickson and others against A. C. Neal and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Jordan Sellers, of El Dorado, Ark. (George O. Patterson, of Clarksville, Ark., on the brief), for plaintiffs in error.

W. P. Strait, of Morrillton, Ark. (Vincent M. Miles and Thomas B. Pryor, both of Ft. Smith, Ark., on the brief), for defendants in error.

Before STONE and KENYON, Circuit Judges, and FARIS, District Judge.

FARIS, District Judge. Plaintiffs in error, as plaintiffs below, sued divers persons, in separate actions to recover certain parcels of land situate in Conway county, Ark. These several actions, which involved identical facts and issues (the parcels of land alone being different), were consolidated, and the consolidated case tried below by the court, upon an agreed statement of facts.

Defendants' answer set up divers equitable defenses, which (a jury having been waived as to issues triable to a jury) were, with the whole case, heard by the court and the issues found for defendants and a judgment and decree entered, quieting title in them. To test the correctness of these findings and judgment, plaintiffs prosecute this writ of error.

One William C. Stout is the common source of title. At and prior to the 1st day of October, 1867, said Stout held the paper title to the lands in controversy, comprising in all some 2,400 acres. On the day last mentioned, he and his wife, Mary E. Stout, joined in a conveyance of these lands to one Thomas B. Stout, as trustee; in trust, however, to hold and administer them "for the sole use and benefit of the aforesaid Mary E. Stout, during the term of her natural life and for *the children of her body forever."* By this trust instrument, the rents and income from the land were to be paid annually, · by the trustee to Mary E. Stout. It was further provided that whenever the trustee should be requested by Mary E. Stout "in writing under her hand and seal" to do so, he should convey these lands "to Mary E. Stout for the term of her natural life, and unto the *heirs of her body forever,* in fee simple." (Italics are ours.)

This conveyance in trust recited, as matters of explanation, inducement, and partial consideration, that the lands had been bought by William C. Stout with moneys obtained by him from the separate estate of his wife, Mary, and that they were in equity her property.

The trustee never in fact took possession of these lands, or exercised any dominion or control over them, or over the rents and income accruing from them. Seemingly— though the fact nowhere appears except by broad inference—William C. Stout resided upon them with his wife, Mary E. Stout, and controlled them and collected the rents and income from them till his death in 1886. Thereupon Mary E. Stout retained possession and sole control of them, and rented them and used them wholly as if she owned them in fee, till they were sold under mortgages as hereafter set out. In 1889, some part of these lands, exactly how much in acres is not clear, were conveyed by the trustee to Mary E. Stout, by a deed which recited that the grant was to her "for the term of her natural life, with remainder in

fee simple to the heirs of her body." This trustee died in 1893, without ever making any other or further conveyance of the lands.

Plaintiffs below, Thos. P. Stout and Mary I. Lane, are the two living children, and plaintiff Mary E. Dickson is the sole surviving heir of a deceased child of Mary E. Stout, and together these three comprise all the children and descendants of children, and all of the heirs of the body of Mary E. Stout, who died April 22, 1922.

In the years 1889 and 1890 certain mortgages of the fee in this land were made to the Topeka Land & Investment Company, and to others by Mary E. Stout, to secure the payment of money borrowed by her. Subsequently, these mortgages were foreclosed by a consolidated action in equity, in which plaintiffs Thos. P. Stout and Mary I. Lane were made parties defendant, and wherein they did not set up any claim of title as remaindermen. Under these decrees in foreclosure, the lands were sold in 1896, to Miller and Ragland, who later sold them to one Martin, who held possession of them till his death; whereupon, they passed by deed from Martin's heirs to these defendants, who hold them, thus, through the above mortgages by mesne conveyances. One of these mortgages, at least, was given to secure payment of money loaned to the firm of Mary E. Stout & Co., in which firm plaintiffs Thos. P. Stout and Mary I. Lane were partners with their mother.

After the foreclosure sale, and in 1896, an action was brought by plaintiff Mary E. Dickson, then an infant (but who is now 45 years old), and her brother, who has since died, intestate, to recover their interests in these lands, wherein such proceedings were had in the United States District Court for the Eastern District of Arkansas, as resulted in a decree by consent in favor of these infants for the sum of $3,250, which sum was paid to their guardian for them.

[1] On the 3d day of March, 1890, plaintiffs Thos. P. Stout and Mary I. Lane conveyed, by warranty deed, to their mother, Mary E. Stout, all that part of the lands in controversy here which lie in township 5, and 40 acres in township 6. So, by the well-known rule embodied in section 1498 of Crawford & Moses' Statutes of Arkansas, which carries, perforce the warranty, an after-acquired title to the vendee, even though the vendor had no title when he conveyed, such part of the land as is situate in township 5, and 40 acres in township 6, or 560 acres in all, need no longer concern us, so far as these two plaintiffs are concerned. In 1889, these same two plaintiffs conveyed to their mother, the life tenant, by quitclaim deed, which however used the words grant, sell, and quitclaim, the residue of these lands, all of which lie in township 6.

[2-4] It will have been noted that the conveyance in trust to Thomas B. Stout purports in the habendum clause and by large inference in the granting clause to be for "Mary E. Stout, during the term of her natural life and for the children of her body forever." A subsequent provision of this deed in trust provided for the conveyance of this land to Mary E. Stout upon her request in writing under her hand and seal, and set forth that such conveyance shall be, as to the remainder therein limited, to the "heirs of her body forever." Clearly, the language of the granting clause and the habendum clause prevails over the language last above quoted, and the grant must be construed as a grant to Mary E. Stout for life, with remainder over in fee to such children as may be borne by her. Thus, an estate tail was created, which under the provisions of section 1499 of Crawford & Moses' Digest of the Laws of Arkansas, then and yet in force in Arkansas, was automatically converted into an estate for life in Mary E. Stout with remainder over in fee to the children born to her. A remainder thus created is ordinarily held to be a contingent remainder till the children, who are to take, are in esse; but when they are born, the remainder becomes vested. Blanchard v. Blanchard, 1 Allen (Mass.) 227; Doe v. Considine, 6 Wall. 458, 18 L. Ed. 869. That this is the general rule at common law and in practically all of the states of the Union cannot be doubted or seriously questioned. Golladay v. Knock, 235 Ill. 412, 85 N. E. 649, 126 Am. St. Rep. 224; Bunting v. Speek, 41 Kan. 424, 21 P. 288, 3 L. R. A. 690; 23 R. C. L. 498; Doe v. Considine, 6 Wall. loc. cit. 476, 18 L. Ed. 869.

[5] But it is contended by plaintiffs that under the settled law of Arkansas the remainder created in the children of Mary E. Stout was never a vested estate or interest till 1922, when the particular estate fell in by the death of the tenant for life. In other words, the settled rule in Arkansas, regardless of the rule elsewhere, is that the remainder created in these children was at all times, till the death of their mother, a contingent remainder, and therefore not capable of being aliened by a bare quitclaim deed. This contention, however much at

variance with the general rule, seems as to the law of Arkansas to be well taken. Dempsey v. Davis, 98 Ark. 570, 136 S. W. 975; Watson v. Wolff-Goldman Realty Co., 95 Ark. 18, 128 S. W. 581, Ann. Cas. 1912A, 540; Wilmans v. Robinson, 67 Ark. 517, 55 S. W. 950; Horsley v. Hillburn, 44 Ark. 459. Indeed, the Supreme Court of Arkansas, in the case of Watson v. Wolff-Goldman Realty Co., supra, reiterates the Arkansas rule and seems to recognize this matter of variance, but adheres to the established Arkansas rule as a rule of property.

[6] But the Arkansas cases so holding do not deal with the question whether a remainderman holding a contingent remainder only may not lawfully release his contingent estate to the life tenant in possession by quitclaim deed, as was here attempted to be done. At common law, a contingent remainder could not be aliened to a stranger, but it could be released to the tenant in possession, so as to create in the latter an estate in fee simple. 21 C. J. 1000; 16 Cyc. 653; 23 R. C. L. 575; Smith v. Pendall, 19 Conn. 107, 48 Am. Dec. 146; Miller v. Emans, 19 N. Y. 384; Williams v. Esten, 179 Ill. 267, 53 N. E. 562; McDonald v. Bank, 123 Iowa, 413, 98 N. W. 1025; Ortmayer v. Elcock, 225 Ill. 342, 80 N. E. 339; Shindler v. Robinson, 150 App. Div. 875, 135 N. Y. S. 1056; Lampert's Case, 10 Coke 46b; Matlock v. Lee, 9 Ind. 298; Bartholomew v. Muzzy, 61 Conn. 387, 23 A. 604, 29 Am. St. Rep. 206; Bunting v. Speek, 41 Kan. 424, 21 P. 288, 3 L. R. A. 690.

The common law is in effect in Arkansas. Hardage v. Stroope, 58 Ark. loc. cit. 307, 24 S. W. 490. Therefore it ought to follow that in Arkansas even, a contingent remainder may be released by the remainderman to the holder of the life estate. No Arkansas cases have been called to our attention by counsel, and our own somewhat extensive researches have uncovered none, wherein such a release has been considered. The case of Le Sieur v. Spikes, 117 Ark. 366, 175 S. W. 413, is not an authority against the view here taken. Obviously, if we could view the case as one dealing with a vested remainder—as it really is, practically everywhere, except in Arkansas—the matter would present no difficulty. But viewing the quitclaim deed from plaintiffs Stout and Lane to their mother as a release of their interests, we conclude, absent a ruling by the Supreme Court of Arkansas upon the point, that the above plaintiffs had the right to release and did by this conveyance release to their mother all interest they had in the residue of this land.

[7] Moreover, as said, equitable defenses were urged, for that, among other things, the claims of plaintiffs cast a cloud upon the title of defendants, which upon a proper pleading defendants prayed might be removed. Specifically, and among others, there was set up the defense of equitable estoppel arising upon these facts: In the years 1889 and 1890, as already set out in the statement of the case, certain mortgages of the fee in this land were executed by Mary E. Stout to the Topeka Land & Investment Company, and to others, to secure the payment of money borrowed by her. Subsequently, these mortgages were foreclosed by a consolidated action in equity in which Thomas P. Stout and Mary I. Lane were made parties defendant, and wherein they did not set up any claim or title as remaindermen or otherwise. Under the decree rendered in this foreclosure suit, the lands were sold in 1896 to Miller and Ragland, who later sold to one Martin, who took and held possession of them till his death. After the death of Martin his heirs sold and conveyed these lands, in divers separate parcels, to the several defendants in this consolidated action at bar, some nine or more in all; who thus hold by mesne conveyances titles founded on the decree against plaintiffs Stout and Lane. In passing, but standing alone mayhap of no important legal bearing, it may be said that one at least of the mortgages thus executed and foreclosed was given to secure the payment of debts owing by a copartnership of which plaintiffs Stout and Lane were members.

The several defendants, as well as Martin, from whose heirs defendants bought these lands, paid the then fair and reasonable market value therefor, entered into possession, and have severally made large and valuable improvements upon them. Since then, the plaintiffs Stout and Lane were parties defendant to this foreclosure suit, since they were then sui juris, since they were in that action afforded an opportunity to set up their remainders in fee (if they were not then barred by their quitclaim deed to their mother), and failed and neglected so to do, they are by a clear and plain rule estopped as to these defendants from now setting up title to these lands. Williams v. Neely, 134 F. 1, 67 C. C. A. 171, 69 L. R. A. 232; 10 R. C. L. 689. We conclude that for both or either of the reasons above discussed, plaintiffs Stout and

Lane ought not to recover these lands in this action.

[8] We are also of the view that the trial court was correct in his decree against the defendant Mary E. Dickson. In 1896 and after the foreclosure sale this plaintiff and her brother, both then infants, brought suit, by their next friend, against Miller and Ragland, the purchasers at the sale under the decree foreclosing the mortgages, and Martin, the grantee of the lands under a conveyance by Miller and Ragland, the object and nature of which was to obtain a decree adjudging that Martin held these lands for the use and benefit of plaintiff Dickson and her brother, who has since died, unmarried and intestate. In this case a decree by consent and pursuant to compromise was entered, whereby, upon the payment of the sum of $3,250, by defendants therein to said infants, plaintiffs therein, the title was quieted in Martin, Miller, and Ragland, defendants in the suit. This decree, inter alia, recites that a dispute existed, that there were substantial grounds on which to bottom such dispute, and that it appeared "to the court that the settlement upon the terms proposed is to the interest of the complainants."

Upon the above facts, the questions arise: (a) Whether this compromise is binding upon plaintiff Dickson, who is now, as already said, 45 years of age; and (b) whether, if it be not binding and conclusive upon her, she may, as here sought, attack it collaterally. We think the first query above propounded must be answered in the affirmative upon authority of the ruling of the Supreme Court of the United States in the case of Thompson v. Maxwell Land Co., 168 U. S. 451, 18 S. Ct. 121, 42 L. Ed. 539. And as a necessary corollary, as also, upon its merits, the second query is to be answered in the negative. In the case last above cited, at page 463, quoting with approval from a Massachusetts case and then continuing, the court said:

"'An infant is ordinarily bound by acts done in good faith by his solicitor or counsel in the course of the suit, to the same extent as a person of full age. Tillotson v. Hargrave, 3 Madd. 494; Levy v. Levy, 3 Madd. 245. And a compromise, appearing to the court to be for the benefit of an infant, will be confirmed without a reference to a master; and, if sanctioned by the court, cannot be afterwards set aside except for fraud. Lippiat v. Holley, 1 Beav. 423; Brooke v. Mostyn, 33 Beav. 457, and 2 De G., J. & S. 373.

"'If the court does pronounce a decree against an infant by consent, and without inquiry whether it will be for his benefit, he is as much bound by the decree as if there had been a reference to a master and a report by him that it was for the benefit of the infant. Wall v. Bushby, 1 Bro. Ch. 484; 1 Dan. Ch. Prac. 164. The case falls within the general rule, that a decree made by consent of counsel, without fraud or collusion, cannot be set aside by rehearing, appeal or review. Webb v. Webb, 3 Swanst. 658; Harrison v. Rumsey, 2 Ves. Sen. 488; Bradish v. Gee, Ambl. 229; S. C. 1 Keny. 73; Downing v. Cage, 1 Eq. Cas. Ab. 165; Toder v. Sansam, 1 Bro. P. C. (2d Ed.) 468; French v. Shotwell, 5 Johns. Ch. 555.'

"Ordinarily indeed a court before entering a consent decree will inquire whether the terms of it are for the interest of the infants. It ought in all such cases to make the inquiry, and because it is its duty so to do it will be presumed, in the absence of any showing to the contrary, that it has performed its duty. In this case, while the decree fails to recite the making of such an inquiry, there is nothing to indicate that it was not made; the circumstances tend strongly to show that it was in fact made, and the finding is that the conclusion reached by the chancellor as to the advisability of the settlement was a sound exercise of his discretion."

The case of Rankin v. Schofield, 81 Ark. 440, 98 S. W. 674, is urged upon our attention as holding to the contrary and as an authority also, justifying a collateral attack. As correctly said by the learned trial court, the Rankin Case justifies neither of the propositions asserted by plaintiffs. So we need not and do not consider whether a federal court is or is not bound by the local law in administering equity. This oftimes is a debatable question, and not being necessary to a decision here for the reason above stated, we lay it aside, till we shall hereafter meet it again face to face.

The discussions in the very able briefs of counsel have taken a wide range. Many other questions are mooted, which, while interesting, we deem not necessary to a decision of the case. The points already discussed seem to us decisive, and the divers incidental and collateral things suggested in the briefs, but not discussed by us, are such as, in our opinion, have no vital bearing on the matters up for judgment.

It follows that the view taken and the

judgment and decree rendered below are correct, and the case ought to be affirmed, and accordingly we so order.