George E. Saunders, Appellant, v. C. C. Wilson, Appellee.

June 26, 1928.

Rehearing Denied January 23, 1929.

*Stipp, Perry, Bannister & Starzinger* and *Donald D. Holdoegel,* for appellant.

*Heald, Cook & Heald,* for appellee.

EVANS, J.—The foregoing statement of the ruling appealed from is suggestive of simplicity, but it furnishes no indication of the question actually litigated between the parties. As ground for dissolving the attachment, the defendant asserted in his motion, and the court held, that he had no other interest in the real estate attached than that of the contingent remainder under the will of Joseph Boiler, deceased. The resisting contention of the plaintiff was that the defendant had a vested interest in said land, under the will of Joseph Boiler, though conceding it to be subject to defeasance by condition subsequent. In his motion to dissolve, the defendant incorporated Paragraph 7 of the will of Joseph Boiler, as follows:

"The above mentioned devisees Chester D. Boiler, Nora Ella Boiler, Ada A. Boiler and Nettie A. Wilson, formerly Nettie A. Boiler, being my only children, it is my further will that at the death of either of them, the specific real property to each one above devised shall descend to the child or children of each individual devisee in fee simple, share and share alike, but if at the time of the decease of either of my said children, devisees aforesaid, they have no surviving children then and in that case it is my will that the specified real property shall descend to my remaining surviving children, above mentioned, in fee simple, share and share alike. Provided, however, that in case any one of my said children aforesaid shall have previously died leaving a child or children surviving them, then and in that case it is my will that said child or children shall take in equal shares as representatives of their deceased parents."

In sustaining the motion, the district court found, as a conclusion of fact and law, that the defendant held only a contingent remainder in the land, and that the same was not subject to judicial sale. Incorporated in the order sustaining the motion to dissolve, and likewise in the judgment entry, was the further proviso "that no execution, either general or special, shall issue against said land, or any part thereof; and it is further ordered, adjudged, and decreed that said land, nor any part thereof, shall not be sold under general or special execution, so long as defendant's interest therein shall remain a contingent remainder."

It will be noted that the appeal is simply from an order dissolving an attachment in a law action. Whether the order is

appealable, is a question of doubt in our mind. The plaintiff has his personal judgment, and his lien is equal to that of an attachment. The question whether the attachment should have been dissolved, has doubtless become moot. At least there is nothing in the record to indicate that the order of the court in  dissolving the attachment has worked any prejudice to the plaintiff. In view, however, of the broad scope of the order, as entered, and that the parties are mutually presenting the issue upon the question whether the defendant has a vested remainder or only a contingent one, we proceed to the consideration of that question.

· · I. We have already set forth Paragraph 7 of the will of Joseph Boiler. It should further be noted that, by Paragraphs 2, 3, 4, and 5 of such will, Joseph Boiler devised to each of his four children a life estate in certain parcels of land specifically described. The quantity thus devised severally to each of his children was approximately 900 acres. The lands attached herein were devised for life by Paragraph 5 to the daughter Nettie Wilson, who is the mother of this defendant. It appears that the testator died in 1900; that, at that time, the defendant Wilson was the only child of the daughter Nettie Wilson; that since said date two other children have been born to her, and are now living; that no child has been yet born to any other of the children of the testator. Paragraph 7 is to be read in the light of these facts. It will be noted that, by Paragraph 7, the remainder is devised to the "surviving children," if any, of the life tenant at the time of her death; if no child of the life tenant survive her, then to the surviving children of the testator and to the children of those deceased. The district court held that the remainder thus devised to this defendant, as the child of Nettie Wilson, was a contingent one. Such holding is supported by our following cases: *Williamson v. Youngs*, 200 Iowa 672; *In re Will of Wolber*, 194 Iowa 311; *Sutherland v. Green*, 191 Iowa 711; *Horner v. Haase*, 177 Iowa 115; *Baker v. Hibbs*, 167 Iowa 174; *Birdsall v. Birdsall*, 157 Iowa 363.

In *Williamson v. Youngs*, supra, the remainder under consideration was devised by substitution to the issue of the life tenant's predeceased child. In *In re Will of Wolber*, supra, it was likewise to the issue of the life tenant's predeceased child. In

*Sutherland v. Green*, supra, it was to the "surviving children" of the life tenant. In *Horner v. Haase*, supra, it was to the children "living" at the time of death of life tenant, and to the issue of deceased children. In *Birdsall v. Birdsall*, it was to the children of the life tenant "then living," and to the issue of those deceased. Pursuant to our former holdings, therefore, the district court properly held the remainder to be contingent.

II. It remains to consider the question whether a contingent remainder is subject to seizure and judicial sale in favor of a creditor. It is the contention of the appellant that all interest  in land, whether contingent or otherwise, as a general rule, is subject to seizure and sale on general execution. 23 Corpus Juris 335. The argument is that a contingent remainder is alienable by the voluntary contract of the remainderman, and that, therefore, it must necessarily be subject to execution. Such is the holding in some jurisdictions. *White v. McPheeters*, 75 Mo. 286; *DeHaas v. Bunn*, 2 Pa. St. 335 (44 Am. Dec. 201); *Wood v. Watson*, 20 R. I. 223 (37 Atl. 1030). Some of these holdings are predicated upon statutory provisions.

It is doubtless true in this state that a voluntary contract by a contingent remainderman to convey his interest may, after the vesting, be enforced in equity as an executory contract. Such enforcement, however, is predicated to some extent upon equitable grounds, such as the receipt of consideration and benefit, which are deemed binding upon the conscience of the chancellor and of the litigants. It is true also that, if the contingent remainderman sells with a covenant of warranty, such warranty becomes effective, under the statute, to carry to the purchaser the future acquisition of the seller by the vesting of his remainder. It does not necessarily follow, however, that a legal transfer of such contingent remainder may be obtained by an execution sale. Ordinarily, the rights acquired by an execution-purchaser are legal, rather than equitable. We have twice had the question under consideration, without making a very definite pronouncement thereon. *Taylor v. Taylor*, 118 Iowa 407; *McDonald v. Bayard Sav. Bank*, 123 Iowa 413. In the *Taylor* case we said:

"Under our statute, judgments 'are liens upon the real estate owned by defendants' (Section 3801, Code); and real es-

530

tate 'includes lands, tenements, hereditaments, and all rights thereto and interests therein' (Paragraph 8, Section 48, Code). These sections contemplate a present tangible right to or interest in the land : that is, it must be owned by the judgment defendant at the very time the lien is claimed to have attached. The evolution of the law concerning the assignability of contingent remainders need only be referred to. It is enough to say that they are now generally held assignable. *Miller v. Emans*, 19 N. Y. 384; *Bodenhamer v. Welch*, 89 N. C. 81. The possible exception is where the uncertainty is with respect to the person. Such a transfer, it seems, will not be upheld in law, though often sustained in equity. It is not a possibility coupled with an interest. 4 Kent, Commentaries, 252. No one can be said to own it. Several may have the chance of acquiring it. Any right the remainderman may have is said to be in abeyance. Says Mr. Washburn, in his work on Real Property : 'For a long time a contingent remainder was not supposed to be the subject of alienation, because it was rather the possibility of an estate, like the possibility of an heir at law, for instance, having the estate when his ancestor shall have died. But it is now settled that, when the contingency upon which the remainder is to vest is not in respect to the person, but the event, when the person is ascertained who is to take if the event happens, the remainder may be granted or devised, and the grantee or devisee will come into the place of the grantor or devisor, with his chance of having the estate. But if the contingency is in the person who is to take,—as where the remainder is limited to the heirs of one now alive,—there is no one who can make an effectual grant or devise of the remainder.' As the statute refers to a present interest in land, and F. M. Taylor had but the probability of acquiring it, nothing passed under the execution sale. Where the possibility is coupled with an interest, as in *White v. McPheeters*, 75 Mo. 286, a different rule may obtain. The statute of that state is as broad as our own, and, as the uncertainty was not as to whether McPheeters would be the taker, but whether the life tenant would die first, the contingent remainder was found subject to the lien of the judgment. Unless he took, no remainder was provided, as the land would, under the terms of the will, in that event, go to the life tenant. The uncertainty, then, was not as to the person, but the event. The case of *Young v. Young*,

89 Va. 675 (17 S. E. Rep. 470, 23 L. R. A. 642), is somewhat in point. There the devise was to Ann Porter Young for life, with remainder in fee to such of her issue as might be living at her death. Judgment *in rem* was obtained against one of her children, Robert W. Young, a nonresident, before the death of the life tenant, through a writ of attachment levied on the land; and the court held that this was before the remainder vested in said Young, 'and while he had no interest in said property which could be subjected to a lien of attachment. In the opinion of this court, the words ''estate or debts'' due him ''within the county or corporation in which the suit is,'' in Section 1, Chapter 148, Code Va. 1873, were not intended to apply to a mere possibility, such as the said R. W. Young had at the time the said attachment was sued out.' See note to this case in 23 L. R. A. 642. And, where the uncertainty is as to the taker, the remainder, although an assignment of it may be enforced in equity, was held not subject to execution, in *Watson v. Dodd*, 68 N. C. 528, the court remarking that 'it is clear that such a possibility would sell for little or nothing, as no one would bid except the holder of the first estate, for the purpose of extinguishing the limitation.' See, also, 2 Freeman, Executions (3d Ed.), Section 278; *Haward v. Peavey*, 128 Ill. 431 (21 N. E. Rep. 503, 15 Am. St. Rep. 120); *Harrington v. Sharp*, 1 G. Greene 131. The decisions of New York are based on statutes peculiar to that state. See *Moore v. Littel*, 41 N. Y. 66. We are inclined to the view that, where the uncertainty of a contingent remainder involves solely the question of who shall take the real estate, it is not, before vesting, the subject of levy and sale under execution.''

In *McDonald v. Bayard Sav. Bank*, 123 Iowa 413, we held definitely that a contingent remainderman could legally convey or relinquish his interest as such to a party in interest. We predicated this holding both upon our statute and upon the authority of precedent. We said:

''While we are satisfied that the conclusion which we have reached under the statute is correct, there is still another line of authorities announcing a rule which commends itself to our judgment as sound, and which we think somewhat analogous to the construction placed upon the statute. It is the rule that a possibility, 'not being a bare expectancy, but having a founda-

tion and original inception of right,' may be released to a party in interest, though not to a stranger. Williams on Real Property [6th Ed.] 277.''

As to the particular question now before us, we said in that case:

''In *Taylor v. Taylor*, 118 Iowa 407, the questions were as to the character of the interest of the judgment debtor in the land, and whether a contingent interest in land was subject to a levy and sale under execution. We held that it was not, because of sections of the statute creating liens upon and defining real estate contemplate a 'present, tangible right to or interest in the land: that is, it must be owned by the judgment defendant at the very time the lien is claimed to have attached.' There was no question in the case as to whether a contingent interest might be voluntarily conveyed under the statute, and our conclusion here in no way contravenes the holding there.''

In that case, we construed the *Taylor* case as holding that a contingent remainder in land is not subject to execution sale. In the case at bar, the contingency involved does render uncertain the person who will take the fee at the time of death of Nettie Wilson. The uncertainty is which, if any, of these three children will survive the life tenant. Clearly, it was the rule of common law that contingent remainder could not be subjected to sale on execution. This rule still obtains in many jurisdictions. One of the prominent reasons for such a holding is that the sale and purchase of such an interest becomes a mere gamble, and is oppressive in its nature, and tends to a thwarting of the will of the testator.

Pursuant to our holding in the *Taylor* case, we must now hold that a mere contingent remainder is not subject to sale on execution. In support of our foregoing holding is our former pronouncement, somewhat in the nature of dictum, in *Fulton v. Fulton*, 179 Iowa 948, 966, and 967, as follows:

''The right to suspend the power of alienation for a limited time is a right permitted to the testator, under our statute. Many testators desire to avail themselves of this right. To the mind of the testator, it is often a method of conserving the devise to the real benefit of the devisee. A vested remainder is

alienable; a contingent remainder is inalienable. The effect of the New York rule, as applied in some cases, is to reduce the right of the testator to suspend to some extent the power of alienation. The remainder contingent at common law is held to be vested, under the New York rule, in order to subject it to alienation by the devisee and to seizure upon execution against him; and this even though such vested remainder be subject to defeasance by a condition subsequent. When it is considered that the sale or purchase of such an estate subject to defeasance amounts ordinarily to a mere wager, and is in the nature of an act of waste and dissipation of the estate before its enjoyment has begun under the terms of the will, and when it is considered further that the suspension of the power of alienation is a matter wholly of legislative cognizance, and that legislative permission is had for such suspension for a limited time, there is no very persuasive reason apparent why a mere judicial presumption should be created to run counter to such legislation. And this is only another way of repeating that the intent of the testator must govern, subject only to the statute against perpetuities. Nor should it be deemed a quasi offense against such statute that the testator has availed himself of its permission.''

The judgment of the district court is, accordingly,—*Affirmed.*

DE GRAFF and ALBERT, JJ., dissent.

MORLING, J., not participating.

All the other justices concur.

ALBERT, J. (dissenting).—The parties agree that the sole question in this case is whether or not the interest of the defendant in the real property attached is subject to the levy of attachment and execution. The facts are undisputed.

Joseph Boiler, at the time of his death, in 1900, was the owner in fee of the real estate involved herein. He was survived by his wife, Julia P. Boiler, who accepted the provisions of his will, and who in no way is affected by the questions in controversy herein. No further attention will, therefore, be given to her or her rights under the will.

Joseph and Julia P. Boiler were the parents of four children: to wit, Nora Ella, Ada A., Chester D., and Nettie A. (who

married one Wilson, her name appearing in the will as Mrs. Nettie A. Wilson). To Chester D. he left a life estate in 880 acres of land in Pottawattamie County; to Nora Ella, a life estate in 640 acres in Cherokee County and 320 acres in Plymouth County; to Ada A., a life estate in 640 acres in Cherokee County and 167 acres in Plymouth County; to Nettie A. Wilson (formerly Nettie A. Boiler) he devised a life estate in the southwest quarter of Section 20, Township 92, Range 42, in Cherokee County, Iowa; also all of Section 7, Township 91, Range 34, in Pocahontas County, Iowa; also the southwest quarter of Section 35 in Township 77, Range 38, in Pottawattamie County, Iowa. Each of these devises was under certain limitations and conditions which are not material to the questions involved herein. The will then proceeds:

"Section VII. The above mentioned devisees, Chester D. Boiler, Nora Ella Boiler, Ada A. Boiler and Nettie A. Wilson, formerly Nettie A. Boiler, being my only children, it is my further will that at the death of either of them, the specific real property to each one above devised shall descend to the child or children of each individual devisee in fee simple, share and share alike. But if at the time of the decease of either of my said children, devisees aforesaid, they have no surviving children then and in that case it is my will that the specific real property shall descend to my remaining surviving children, above mentioned, in fee simple, share and share alike. Provided, however, that in case any one of my said children aforesaid shall have previously died leaving a child or children surviving them, then and in that case it is my will that said child or children shall take in equal shares as representatives of their deceased parents."

Nettie A. Wilson is still living, and is the mother of three children, one of whom is the defendant, C. C. Wilson, who was born prior to the execution of the will aforesaid. After the commencement of this action, writ of attachment was issued and levy made on all the right, title, and interest of the said C. C. Wilson in the land described in the bequest to Nettie A. Wilson. The defendant moved to dissolve the attachment and release the property, on the ground that the interest of the defendant in said realty was only a contingent remainder, and not

subject to attachment or execution. Plaintiff filed appropriate resistance, and the facts heretofore recited were, in effect, agreed upon by the parties. But two questions are argued: (1) Whether the interest of C. C. Wilson in the land in controversy is a vested or contingent interest, and (2) if vested, it is conceded that it was subject to levy under this attachment. If, on the other hand, it is found that his interest is only a contingent remainder, then we have the further question as to whether or not, under the law of this state, it is a contingent remainder of such an interest that it can be levied upon and sold under execution.

Of the many puzzling questions with which this court is confronted, there is probably none more troublesome than the question of contingent remainder. Many courts have attempted to announce rules for determining the question, with the result of much confusion, and not much clearing of the atmosphere surrounding it. In fact, the many decisions of this court on the question evidence some dissonance. The want of similarity in the wording of the instruments creating the remainders tends to confusion, and makes it practically impossible to make definite rules of construction; yet there is not so serious a conflict in our decisions as would appear on a cursory reading. We have settled some phases of the question, from which we do not care to recede. For instance, in *Schrader v. Schrader*, 158 Iowa 85, at page 88, we said:

"It has been held in a multitude of cases that, in the absence of other language necessitating a different construction, a provision that the remainder over shall pass to the remaindermen 'on the death' of, 'at the death' of, or 'after the death' of, the life tenant, or other terms of like import, has reference to the time when the devisee shall come into the right of possession and enjoyment of the property devised, and will not prevent the vesting of the remainder immediately upon the death of the testator. See *Archer v. Jacobs*, 125 Iowa 480; *Shafer v. Tereso*, 133 Iowa 342."

See, also, 23 Ruling Case Law 526.

In the instant case, we find nothing in the will to prevent the application of the rule laid down in the above cases. Under this rule, the phrase used in this paragraph of the will, "at the death of either of them," has reference only to the time of pos-

session and enjoyment of the remainder, and in no way prevents the vesting of the remainder immediately upon the death of the testator.

The first part of the bequest in controversy is as follows:

"The above mentioned devisees, Chester D. Boiler, Nora Ella Boiler, Ada A. Boiler and Nettie A. Wilson, formerly Nettie A. Boiler, being my only children, it is my further will that at the death of either of them, the specific real property to each one above devised shall descend to the child or children of each individual devisee in fee simple, share and share alike."

Up to this point, then, the children of Nettie A. Wilson take a fee-simple title, the possession of the property and enjoyment thereof being deferred during the life of Nettie A. Wilson. If this were all there was to this devise, there could be no question that the interest of C. C. Wilson in the property in controversy was a vested interest. The devise, however, proceeds as follows:

"But if at the time of the decease of either of my said children, devisees aforesaid, they have no surviving children then and in that case it is my will that the specific real property shall descend to my remaining surviving children, above mentioned, in fee simple, share and share alike."

The force and effect of this clause of the will are to divest the interest of the children of Nettie A. Wilson of the vested interest devised by the first clause of the will in event that such child did not outlive its mother, Nettie A. Wilson. In the case of *Horner v. Haase*, 177 Iowa 115, we quoted with approval from John C. Gray's very able work "The Rule Against Perpetuities" (3d Ed.), Section 108, as follows:

"Whether a remainder is vested or conditional depends upon the language employed. If the contingent element is incorporated into the description of or into the gift to the remainderman, then the remainder is contingent; but if, after the words giving a vested interest, a clause is added divesting it, the remainder is vested. Thus, on a devise to A for life, remainder to his children, but if any child dies in the lifetime of A, his share to go to those who survive, the share of each child is vested, subject to be divested by its death. But on a devise to

A for life, remainder to such of his children as survive him, the remainder is contingent."

In the will under consideration in the *Horner* case, the contingent element was incorporated in the description of the gift. Hence the court held that the remainder was contingent.

In the case at bar, the testator says he gives to the remaindermen a fee-simple title; hence there can be no question, under the Gray rule, that the defendant, C. C. Wilson, was given a vested interest in said land, subject to be defeated, however, by his failure to outlive his mother.

In *Sherlock v. Thompson*, 167 Iowa 1, the will provided that the husband of the deceased should act as trustee so long as he lived, and on his decease, his son, Frank B. Sherlock, was to succeed to such trusteeship. The trustees were denied the power of sale unless under order of court, and W. M. and Frank Sherlock were given a life estate in the property, and a life estate was given to the survivor thereof. It was provided that no title to said property should vest in either Frank B. or W. M. Sherlock, and that, on the death of the survivor of the said two persons:

"I will devise and bequeath, in equal shares, share and share alike, to my nieces and nephews who shall be living at the date of the death of the survivor of the two persons named, * * * [the title to all my property]."

It is apparent here that the limitation as to nieces and nephews, to wit, that they were to be living at the time of the death of the survivor of the two trustees, is incorporated in and made a part of the gift itself. It is a condition precedent to the taking by any one of these nieces and nephews that they must be living at the date of the death of the survivor of said trustees. The remainder to these nieces and nephews was, therefore, contingent.

In *Wilhelm v. Calder*, 102 Iowa 342, the provision in the will was that the executor should hold the estate until the youngest child was 21 years of age, when he was to divide it equally between the children of the testator "then living." It was held that this created a contingent remainder.

In the case of *Westcott v. Meeker*, 144 Iowa 311, 312, under the terms of the will, the property went to Westcott during his

life, and at his death to his heirs. It was held that, until the death of Westcott, he had no heirs; hence the persons who would take the property after his death were uncertain. The remainder was held to be contingent. In this case, referring to the line of authorities cited, the court said:

"The cases relied on for appellants are not in point, because all of them involve remainders to children of the life tenant, with the result that the remainder became vested at once, if there were living children (subject, of course, to a condition subsequent), or might vest before the termination of the life estate by birth of children to the life tenant."

In *Blain v. Dean*, 160 Iowa 708, a life estate was given to the wife, and after her death the executor was directed to sell the remaining land and divide the proceeds equally among the children. The will further provided:

"If any of my children shall have died leaving no issue I direct that his share shall be divided among those leaving issue and among my other children then living."

The widow refused to accept the terms of the will, and took her dower right, which was set off to her. This, of course, eliminated the life estate, and accelerated the remainders accordingly; so that the share of the daughter Ethel, who was one of the children of the testator, became immediately vested. She died intestate, without issue, a year and five months after the death of her father. It was held that the last clause of the will, covering the death of the children without issue, referred to the date of the death of the testator, and not to the date of the death of the life tenant, and that the remainder of the daughter Ethel was not contingent, but vested.

In *Jones v. Parsons*, 182 Iowa 1377, the life estate of a daughter was by the will placed in the hands of a trustee, and it was further provided that, at the death of the life tenant, the property should go to "her nearest blood connection." It was decreed a contingent remainder.

In the case of *Bladt v. Bladt*, 191 Iowa 1344, the controlling paragraph of the will gave to the wife a life estate, with power of disposal, and provided that, in case she did dispose of all or any part of the estate, she was to deduct her one third, and the

balance was to be divided among certain issue (naming them), share and share alike, and in case one of said parties should be dead, without issue, that share should revert to those of the named parties then living. It was held that there was a contingent remainder. The writer of that opinion, however, overlooked the fact that there was no remainder created in said estate following a life estate. Had the wife died without disposing of any part of said estate, then the property would have been disposed of as though the testator had died intestate. In other words, there was no remainder whatever created in the property to be supported by or following the life estate given to the wife. It was only in event that the wife disposed of some part or all of the estate during her lifetime that the division provided for was to be made. The question involved was not the question of vested or contingent remainder.

In *Sutherland v. Green*, 191 Iowa 711, the bequest was to the wife for life, and then: "After her decease I give and devise the same to the *surviving* children of my said wife, * * * share and share alike, to them, their heirs and assigns forever." It was held that this remainder was contingent, and rightly so; because the specific provision was that it was to go to the children who survived the wife, and, of course, until her death, no one could tell who the surviving children were, as the condition is attached to the gift or devise.

The case of *Williamson v. Youngs*, 200 Iowa 672, is bottomed on the case of *Sutherland v. Green*, supra, as controlling, so as to require a holding that the remainder in the *Williamson* case was contingent. This apparently is a mistaken view, because, in the *Williamson* case, the will provided that, upon the death of the life tenant:

"I give and devise the same to his children or other issue in equal portions, or share and share alike, the issue of any deceased child taking the share or portion which his, her or their parent would have taken if living."

In the *Sutherland* case, cited, the will provided that, after the life estate:

"I give and devise the same to the *surviving* children of my said wife, * * * share and share alike, to them, their heirs and assigns forever."

In that case, the will provided that the remainder was to go to the *surviving* children, and it was held that it was contingent. In the *Williamson* case, there was no provision whatever similar to the provision in the *Sutherland* case as to survivorship. Further than this, the *Williamson* case lays down the rule recognized generally by this and other courts, that:

"An estate is vested where there is some person *in esse*, known and ascertained, who, by the will or deéd creating the estate, is to take and enjoy the estate upon the expiration of the existing particular estate, and whose right to such remainder *no contingency can defeat.*"

Under the facts in that case, it is found that the remainder-man was *in esse* during the life estate, and capable of taking; hence, under the rule cited in the *Williamson* case, the remainder should have been held to be vested, instead of contingent. More than this, the *Williamson* case is made, in part at least, to turn on the statement in the will that the remainder is to be taken "upon the death" of the life tenant. That this cannot be a determining factor in such cases, see *Schrader v. Schrader*, supra.

Some rules are not fairly settled in this state. For instance, in the following cases it is held that the various expressions used, show an intent on the part of the testator that the remainder shall not vest until after the expiration of the life estate. In *Hadley v. Stuart*, 62 Iowa 267, 268, the provision was:

" * * * that my real estate all be sold, and the proceeds arising therefrom be equally. divided between all my heirs."

In *McClain v. Capper*, 98 Iowa 145, the provision was:

"When my youngest child arrives at full age, I desire that the real estate * * * be equally divided between my children [naming them], their heirs, or survivors of them."

In *Baker v. Hibbs*, 167 Iowa 174, 175, at the death of the wife of testator, the executor was ordered to sell the property and divide the proceeds equally among certain named parties. In *In re Will of Wolber*, 194 Iowa 311, the provision was:

"Upon the death of my said wife * * * be divided equally between my six children [naming them]."

It will be noticed that there is no devise whatever to these children, excepting an implied devise arising from the order to divide. In *Taylor v. Taylor*, 118 Iowa 407, the provision was that, at the death or marriage of the life tenant, the property was to be equally divided ''between my children or their heirs.'' In *Olsen v. Youngerman*, 136 Iowa 404, 406, the provision was:

''The principal sum [in the hands of the trustees] shall be distributed between the survivors of said four children.''

In *Fulton v. Fulton*, 179 Iowa 948, the wife was designated the life tenant, and the provision was:

''Upon the death of my wife, I direct that all my property, real and personal, shall be divided between my eight children * * * [naming them]. In case of the death of any of said children without issue living, then the share of such child shall be divided equally among the surviving children, or their legal heirs.''

This case is wholly different from the case at bar, as will easily be perceived from the following quotation, which is the heart of the *Fulton* opinion:

''There is one feature of this case that is quite decisive, and we give it our first attention. It will be noted that, by the terms of the will, the testator directed that, upon the death of his wife, all his property should be *divided* among his children, etc. There is no other provision of the will whereby it purports to devise any property to any children. The *devise* to them is implied by the direction to *divide*, above quoted. In such a case, we have held repeatedly that the devise or gift is inseparable from the direction to divide; and where the directed division is, by the terms of the will, postponed to a future date, the gift is likewise postponed. In such a case the remaindermen take a contingent, and not a vested, remainder, where the will imposes the condition that the remaindermen survive the future event or have issue.''

With the *Fulton* case, therefore, so far as the case at bar is concerned, we have no controversy, as there is no provision in the will before us directing a division of the property at any time. Whether or not, in the light of later cases cited herein, the *Fulton* case is to be followed, is of no concern to us in this case, because of the distinction above pointed out.

It is fairly deducible from the foregoing cases that, where the provision is that, at the expiration of the life estate, the property is to be sold and divided, or is. to be divided in a certain way, the remainder is contingent, and not vested.

Apparently squarely contrary to this deduction, we said, in the case of *Hiller v. Herrick*, 189 Iowa 668, at 677:

"Nor is the direction to 'divide' or to 'sell and divide' between the 'children' or 'heirs' after the death of the wife, without more, any necessary obstacle to the vesting of the remainder,"—citing *Johnson v. Coler*, 187 Iowa 734, and cases there cited.

See, also, *Canaday v. Baysinger*, 170 Iowa 414; *Atchison v. Francis*, 182 Iowa 37; *Haviland v. Haviland*, 130 Iowa 611; *Blain v. Dean*, 160 Iowa 708. We have called attention to these cases because most, if not all, of them, have been cited by one party or the other to this case. But it is apparent on the face that neither of these two lines of authority has anything to do with the decision of the case at bar, because there is no provision in this will for a "sale" or "division" of this property, as there was in the cases cited. There is a specific devise of this property to a specifically named party of a life estate; and on the death of that party it is provided that the devised property shall descend to the child or children of such devisee in fee simple, share and share alike. The devise, therefore, covered by this paragraph of the will is a devise in fee simple, subject to the life estate. The will then provides that, if the remaindermen die, leaving no surviving child or children, then and in that case, the specific real property is to go in fee simple, share and share alike, to the surviving children of the testator; and further, that, if any of said children die, leaving a child or children surviving, said child or children shall take in equal shares, as representatives of their deceased parents.

As we read this will, it seems that the intent of the testator was to give to the children of Nettie A. Wilson a fee-simple title to this property, subject to the life estate in the mother. It so says in plain English, and why should we construe it otherwise? The will further provides that, if Nettie A. Wilson dies without children, then, in that case, the property is devised to the brothers and sisters of Nettie A. Wilson, in fee simple. On the

other hand, on the death of Nettie A. Wilson, she leaving child or children, any such child or children are substituted to the share given her under the will.

The sum total of this is that Nettie A. Wilson took a life estate, but if, at her death, she left a child or children, then such child or children would take the share given to Nettie A. Wilson under the will. So far, therefore, there can be no misunderstanding as to the intent of the testator.

The question before us, however, is one step further advanced than this: Nettie A. Wilson is living, and the mother of three living children, and it is the share of one of these children (C. C. Wilson) that is sought to be held under the attachment in this case; and the question is whether the share of C. C. Wilson was a vested or a contingent remainder.

Under the terms of the will, if Nettie A. Wilson should die at the present time, the will by its terms vests the title to this property in her children, and the defendant herein would be the owner in fee of a one-third interest in said property. In effect, therefore, Nettie A. Wilson has such estate in said property that, if she should die without child or children, the title would pass to her brothers and sisters in fee. Each of her children now living has a vested interest in said property, subject to be defeated if they do not outlive their mother. It is apparent from the terms of the will that the interest of each one of these children in this real property is vested. The gift or grant to them contains no condition precedent to the vesting of the title. It is directed to them, and certain. Since the property is designated, and they are of the class designated in the will, they stand ready to take at any moment the particular estate becomes vacant. The grant or gift is direct to them, and it is without any condition precedent whatever. There is, however, a condition subsequent: that is, that they must be alive at the date of the death of the mother, or the estate will pass to others. It is, therefore, a case where the will vests a specific estate, the possession and enjoyment of which are deferred.

It is a fairly well established rule that, where a remainder is limited to a definite class of beneficiaries, such a remainder vests as soon as any one of that class is in being, subject to being reopened to admit those who later come within the class description, and subject to being divested as to those members of the

class who subsequently die. *Sleeper v. Killion*, 182 Iowa 245; 1 Tiffany on Real Property (2d Ed.) 498; The Rule Against Perpetuities, Gray (2d Ed.), 82, 83; 4 Kent's Commentaries (14th Ed.) 246; Tiedeman on Real Property (4th Ed.), Section 302; 23 Ruling Case Law 533, Section 77.

This being applied to the facts before us, the remainder-men after the life estate of Nettie A. Wilson, are designated as her children, and they are all in being at the present time; hence their interest must be a vested interest, subject, of course, to being defeated in event they do not outlive the mother.

Another rule that receives recognition in practically all of our cases where this question has been before the court is that, if there is a condition precedent to the vesting, then the remainder is contingent; but if the gift is free from a condition precedent, even though it bears a condition subsequent, the remainder is vested. Or, to put it another way, if the conditional element is incorporated into the description of the remainder-men, the remainder is contingent; but if, after a vested interest is given, a clause is added divesting it upon a certain event, the remainder is vested until the condition operates, if ever. We quote this with approval, in substance, in *Horner v. Haase*, supra. It is the rule announced by Gray in The Rule Against Perpetuities (2d Ed.) 81; and under this bequest in this will, there is no condition incorporated in the description of the remainderman (C. C. Wilson), but there is a condition subsequent, —that is, if he does not outlive his mother, his interest in the property becomes divested.

In *Callison v. Morris*, 123 Iowa 297, we had a will very similar in import to the one under consideration. We there said:

"Nor was it necessary to the vesting of the remainder that Jonathan M. Morris survive his mother. 'It is the present, fixed right of future enjoyment whenever the possession becomes vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determined, that distinguishes a vested from a contingent remainder. When the event on which the pending estate is limited must happen, and when, also, it may happen before the expiration of the estate limited in remainder, the remainder is vested.' * * * It is therefore apparent that the remainder vested notwithstanding the language of the will, which, it is argued, created a contingent

remainder. There is nothing in the language itself manifesting an intention to postpone the gift, and it is the general rule that a 'limitation will never be construed as creating * * * a vested one.' Tiffany on Real Property, Section 121; 2 Underhill, Section 861. The latter author says, under the rule 'by which a modern will speaks as of the date of the death of the testator, every gift to a person who is alive at that date vests at once, in the absence of an expression of an intention that the vesting shall be postponed. It will be presumed, when the testator does not expressly or by implication indicate that the vesting of the title to his bounty is to be postponed, that he means it to vest at once upon his death.' "

In *Archer v. Jacobs*, 125 Iowa 467, at 479, we said:

"But none of these contingencies affect the vesting of the remainder in the sons, as the only representatives in being of the class to which the remainder is given. It is true, the will is open to such construction that the remainder vested in the sons of Mrs. Walling may be divested by their death, pending the continuance of the life estate; but, as will be noted by reference to cases last above cited, and many others to the same effect, this does not render the remainder contingent, for, up to the last moment of their lives, their capacity to take the possession, were it to become vacant, is unimpeachable."

In *Shafer v. Tereso*, 133 Iowa 342, at 347, we quoted and approved the *Archer* case, as follows:

"Generally speaking, when there is a person in being who would have an immediate right to the possession of the lands should the life tenancy now terminate, such person has a vested remainder. If, however, something more than the duration of the particular estate stand between the remainderman and the right to immediate possession, if there be some unperformed or unfulfilled contingency which would prevent his taking possession, were the life tenancy now to terminate,—then his remainder is contingent. In other words, it is the present capacity of taking effect in possession if the possession were now to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder."

Generally speaking, precedents are of little value in determining questions of this kind, because of various combinations of words that are used in making devises of this character, and each case must be decided on its own facts.

Without further attempt to harmonize or review our opinions, I would reverse this case.

De Graff, J. (dissenting).—I join in the dissent written by Albert, J., that the remainder in question is a vested remainder. The remainder is vested in the children as a class, subject to open up and let in after-born children, or is defeasible if a child predecease the life tenant and has no children surviving him.

In holding the remainder vested, the dissent recognizes Iowa precedent in accord with *Archer v. Jacobs*, 125 Iowa 467, and is in harmony with the current of authority in America and England in the recognition of the correct legal theory on this subject, as pronounced by all leading text-writers on property law.

The primary issue in distinguishing between vested and contingent remainders is the determination of the time at which the *right* to a future estate begins, rather than the *time* the estate in the future *may be enjoyed.* If, at the death of the testator, the *right* of enjoyment by a remainderman is definitely determined, or thereafter becomes so, the remainder is vested, although the time of *enjoyment* is postponed to an indefinite future date. If, at the death of the testator, the right of a person *in esse* to the estate cannot be determined, but is dependent upon a future event, then the remainder is contingent. Whether the remainer is contingent or vested depends upon whether or not a remainderman has a present right to his estate, although he may not be entitled to use the right until a future time. The remainderman must be in being, ready to take at the termination of the prior *particular* life estate, and have nothing to prevent enjoyment except the termination of the preceding freehold estate. Upon application of the above principles to the instant case, it is clear that the children *in esse* at the death of the testator have a right immediately to the estate in remainder, but the time for them to take is postponed until the death of the party holding the life estate preceding them. The children are in being, and ready to take at the moment of the termination of the preceding life estate, and they have a present right to the

estate, the enjoyment of which is postponed to the future event of the decease of the particular life-estate holder. The fact that the child may not enjoy, because he may die without issue before the time of enjoyment, and thereby be barred, does not make the remainder contingent.

The thing which makes a remainder vested is certainty of the right to enjoy, rather than certainty of the fact of enjoyment. See 1 Lewis's Blackstone 633 (Notes 16 and 17). Putting the thought another way: It is the uncertainty of the right which renders a remainder contingent, not the uncertainty of the actual enjoyment.

"The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent." 2 Greenleaf's Cruise on Real Property 236.

See, also, *Shafer v. Tereso*, 133 Iowa 342, *loc. cit.* 347.

To illustrate: An estate may be devised to A for life, remainder to B for life, remainder to C in fee simple. In such an estate, there is no question but that B holds a vested remainder; because, at the death of the testator, B has a right presently to the estate for the period of B's life, to be enjoyed at the death of A. However, if B predecease A, B's estate would be cut out, being but a life estate; and yet there is no question but that the remainder to B is vested, because, at the death of testator, he has a present right to enjoy, although the time to enjoy is postponed. The material point is the time at which the right accrues. It is not necessary that a remainder be in fact enjoyed, in order that it be vested; and the fact that a remainder may not, does not make it contingent. The fact that during the life of the child, the right is had by him to the estate in remainder, gives him a vested interest in the estate, the enjoyment of which alone is deferred. In declaring the view herein expressed, it is apparent that I have arrived at a different conclusion of the law from that stated in *Williamson v. Youngs*, 200 Iowa 672, and I am now convinced that the reasoning in that case in holding that the interest of the children was that of a contingent remainder was wrong, and I have concluded that in the *Youngs* case the

remainder was vested, and not contingent. In that case, the devise was to Henry for life, and upon the death of Henry, a devise "to his children or other issue in equal portions, share and share alike, the issue of any deceased child taking the share or portion which his, her or their parent would have taken, if living." When the testator died, the life tenant had no children; but subsequently, two daughters and a son, Henry, Jr., were born to the life tenant. Henry, Jr., however, died prior to the preceding life-estate holder, Henry, and the question arose whether the creditors of Henry, Jr., and his widow had an interest in the remainder. The holding of *Williamson v. Youngs*, supra, denied the creditors of Henry, Jr., any right to the estate, and also denied his widow any right in it. In arriving at that decision, I then regarded the remainder of the children (of which Henry, Jr., was one) as contingent, and not vested; and therefore the interests of the above claimants were denied, and the reason stated was that an estate did not vest in Henry, Jr., because he predeceased Henry the life tenant. I am now convinced that the reasoning in that case, holding the remainder to the children of Henry as contingent, is wrong; and I would now hold that, upon the death of the testator, Henry took a life estate, and the remainder to his children at the time any child came into being was vested in the class of children. Until a child was born to Henry, the remainder was contingent, and as soon as any member of the class became *in esse*, the estate in remainder became vested in the class, subject to open and close. For good discussion, see 1 Tiffany on Real Property (2d Ed.) 476 *et seq.*

I concur in the distinction made between a remainder to the *surviving* children, which was held contingent in *Sutherland v. Green*, 191 Iowa 711, and the case at bar, where the remainder is to the children. The word *surviving*, so used in the *Sutherland* case, supra, creates a postponement of both right and time of enjoyment. The section quoted in the dissenting opinion, supra, from John C. Gray's Treatise, The Rule Against Perpetuities, shows specifically the exact distinction here made, which an examination of authorities shows has been generally accepted in this country. However, the case of *Williamson v. Youngs*, supra, was correctly decided, from the standpoint of decision; and if this court had there reached the conclusion that the re-

mainder was vested, it would, of necessity, have announced the same result as it did. In other words, the facts of *Williamson v. Youngs*, supra, were such that the result would have been the same under either view: i. e., whether the remainder was contingent or vested, the creditors of Henry, Jr., had no rights in the estate, nor did his widow. The reason for this is that, by the death of Henry, Jr., without children, prior to the death of the preceding life tenant, Henry, the estate vested in Henry, Jr., while living, but was divested from him at his death, and became the property of the class, viz., the other children of Henry. Ample authority supports this conclusion. An exact case, in almost detail of language and of estate, is found in *Gatto v. Gatto*, 198 Ky. 569 (250 S. W. 833). In this case the court held that the remainder to the children became vested in the class upon the birth of a child, and that it was defeasible if the child died without issue before the death of the preceding life tenant; and the result was identical with *Williamson v. Youngs*, supra, on substantially identical facts. It is to be noted in that case that the divesting clause contained the same conditions as the one in the *Williamson* case.

Another case, exactly in point in decision with the *Williamson* case on the identical problem, is *Roy v. West*, 194 Ky. 96 (238 S. W. 167), where a vendee of a member of the class was held to take nothing after the member of the class was deceased without issue before the death of the life tenant. In that case the court held that the remainder to the children was vested, and that it divested so as to cut out the vendee of a child, due to the fact that the child died before the particular life-estate holder.

In the cases of *Wilkins v. Rowan*, 107 Neb. 180 (185 N. W. 437), *Hudson v. Kellermann*, 12 Ohio App. 424, and *Richards v. Burbank*, 201 Mass. 253 (87 N. E. 575), it is held that a remainder to children as a class, with a substitution clause following, was vested, but defeasible, and that grandchildren of the life tenant took under the will, and not by descent, where a child of the life tenant's had died, leaving children surviving him, prior to the death of the life tenant. The result of the above considerations is that the decision in *Williamson v. Youngs*, supra, was correct, although the reason assigned, that the remainder to the children was contingent, rather than vested, was erroneous.

I join in overruling the basis of the decision in the *Wil-*

*liamson* case and establishing in the law hereafter that a remainder to a class is vested, rather than contingent, and in holding the same in the present case as in *Archer v. Jacobs*, supra. I disagree, however, with the limitation of the rule stated in the dissenting opinion, supra, and I regard that part of the dissenting opinion distinguishing the case at bar from the case of *In re Will of Wolber*, 194 Iowa 311, as being wrong, as are also the cases upon which the *Wolber* case is based. In the *Wolber* case, the provision was that, upon death of the life tenant, the estate was to be equally divided among "my six children," naming them. There is no difference between (1) a devise to A for life, and upon his death, remainder to his children, and (2) a devise to A for life, and upon his death, "my estate to be equally divided between my children." If a remainder is vested in a class in the first devise, supra, it should be in the second; and the distinction noted in the dissenting opinion herein, that one is vested and the other is contingent, is erroneous, and contrary to the great weight of authority. It is stated that the devise or gift is implied from the direction to divide, and that the gift is inseparable from the direction to divide, and therefore contingent.

In the first place, if the words "to be divided" were not in the will, a gift would, nevertheless, be implied to the remaindermen, as the obvious intent of the testator from the execution of the will. The original devise to the life tenant imports gift to remaindermen; therefore, the direction to divide is not an essential element in the establishing of a gift by remainder. In the second place, irrespective of the direction to divide, there would, of necessity, be a division of the property among the children. The right to such division after the death of the life tenant exists without the words directing division, and such words are surplusage, not essential to the creation of the gift or to the division of the gift. At the time for enjoyment of a previously vested remainder, the law, without words directing division, gives right of partition, division, and distribution. In the third place, the real test is, When did the right to the remainder first exist? and the plain answer is that, in both of the above cases, it exists as soon as a child or member of the class comes into being. Therefore, the right being immediately established, the only postponement is to the time of enjoyment, and distinctly not

to the right. The direction to divide is composed of words referring to the enjoyment by the remaindermen, not to the right in them of that enjoyment in the future.

The weight of authority is contrary to the *Wolber* case and the cases upon which it is based. A remainder to a class, following a devise of a life estate, and preceded only by direction for division to members of a class, is vested, and not contingent; and the direction to divide in no way alters the situation. *Sumpter v. Carter*, 115 Ga. 893 (42 S. E. 324, 60 L. R. A. 274); *Thomas v. Thomas*, 247 Ill. 543 (93 N. E. 344, 139 Am. St. 347); *White v. Smith*, 87 Conn. 663 (89 Atl. 272, L. R. A. 1917D 596); *Carter v. Carter*, 234 Ill. 507 (85 N. E. 292).

The error in the Iowa law started by misinterpreting the contingent element in the case of *McClain v. Capper*, 98 Iowa 145. In that case, the devise was to the testator's wife, during the minority of his children, and when the youngest child arrived at full age, the estate was to be equally divided among the children. The contingency element in that case occurs, not because the gift is indicated by the direction to divide, but rather, because attaining the age of 21 years was made a condition precedent to the right of any child to enjoy. The right to enjoy could not be determined until the child became 21; and uniformly the law has held that such a devise properly creates a contingent remainder, not because of the direction to divide, but because the time element and acquiring the age of 21 years were made a condition of the vesting. It differs materially from a case where the devise is to the wife for her life, and upon her death, a direction to divide among the children of the testator. In the latter case, the object of the postponement of the gift is to allow the wife to enjoy a life estate. In the *McClain* case, the object was to see that no one except those 21 years of age got the estate. Without going into this distinction,—which is yet a real distinction,—the courts, following the *McClain* case, have said that, where a gift is implied from a direction to divide, the time of division determines the time of vesting. The objection is that the division points to enjoyment, not to the rights of the parties which exist presently. The right of children *in esse* is just as much vested in the class where the devise is "to A for life, upon his death remainder to his children in fee," as where one says "to A for life, and upon his death to be divided among

his children." In each case, the right exists at the time any of the class come into being, subject to be divested if the child is not in being at the time of the death of the life tenant, where there is a substitution clause, or subject to open up and let others participate in the estate, should they be in being at the time of the death of the life tenant. For a further discussion, see note in 8 Iowa Law Bulletin 111, where the writer reviews and criticizes the decision in the *Wolber* case.

There is nothing in the words "to be equally divided" from which it can fairly be said that the testator wanted only the children who outlived the life tenant to receive the estate, any more than there is in any case of a remainder to a class, which remainder the class is to enjoy at the termination of the life estate.

I joined in the dissent, for the reasons herein stated.