CARL BOGENRIEF, Trustee, Appellee, v. FOREST E. LAW et al., Appellants; W. W. SISSELL et al., Intervenors, Appellees.

No. 43723.

FEBRUARY 9, 1937.

Wilson & Kellam, for appellants.

Frank B. Wilson, guardian ad litem of W. Dean Law and Robert Waine Law.

C. H. Williamson, for appellee.

Elmer E. Johnson and Watson & Watson, and J. O. Watson, Jr., for intervenors, appellees.

KINTZINGER, J.—The facts in this case are undisputed. The record shows that William J. Law died testate on March 14, 1929, leaving surviving him his widow, Mary E. Law, his adopted son, Forest E. Law, and two grandchildren named W. Dean Law and Robert Waine Law. In his will, as construed by the court, he left a life estate in all his real and personal property to his widow, Mary E. Law, and at her death a life estate to his son, Forest E. Law, with remainder in fee to his two grandchildren. The property left by decedent consisted of Lot 1, Block 25, of the original town of Greenfield, and personal property consisting of various notes and securities. In another action to construe his will, the court

"adjudged that a life estate is conveyed to Mary E. Law and after her death a life estate to Forest E. Law, with remainder to the two children of Forest E. Law, to-wit, W. Dean Law and Robert Waine Law."

No appeal was taken therefrom. This will also contains a provision that "No mortgages or liens can be put on this property."

After the death of Wm. J. Law and the probate of his will, said Forest E. Law, in September, 1929, joined in a conveyance of the real estate described in the will and known as Lot 1, Block 25, original town of Greenfield, and received in exchange

therefor a life estate in *Lot No. 5, Block 27,* of the original town of Greenfield, subject to a life estate in Mary E. Law. On March 1, 1931, Forest E. Law and Gayle Law, his wife, executed and delivered to W. W. Sissell, one of the intervenors, a real estate mortgage on his life estate in Lot No. 5, Block 27, original town of Greenfield, and also an assignment of his interest in the estate of Wm. J. Law, deceased, all to secure the payment of his promissory note to intervenor in the sum of $1,050. On April 1, 1931, he also made an assignment of his interest in said estate to W. W. Selvy to secure his note of $100. On April 1, 1931, he also made an assignment of his interest in said estate to secure his indebtedness to Wilbur J. Bridges. On April 10, 1931, he made another assignment of his interest in said estate to Jay E. Howe to secure his note of $180.

On June 28, 1934, he filed a renunciation of the interest granted him under the will of said Wm. J. Law, deceased.

On July 5, 1934, he filed a voluntary petition in bankruptcy in the U. S. District court at Des Moines, and was adjudged a bankrupt on the same day.

On October 8, 1934, Carl Bogenrief, plaintiff herein, was appointed trustee of the estate of said Forest E. Law, and under an order of the bankruptcy court, he, as such trustee, commenced this action to set aside said renunciation, and asked that he, as such trustee, be decreed the owner of a life estate in all the property left Forest E. Law under the will of Wm. J. Law, subject only to the life estate of Mary E. Law.

Gayle Law, wife of Forest E. Law, their two minor children, their guardian, and J. G. Montgomery, trustee of the estate of Wm. J. Law, were made defendants herein.

W. W. Sissell and Jay E. Howe filed petitions of intervention asking to establish liens under their mortgage and assignments against the interest of Forest E. Law in the property in question to the extent of the amounts secured thereby.

The defendant Montgomery filed a disclaimer, alleging that he was holding the property only as trustee, and would abide by the ruling of the court on the controversy between the parties involved. The other defendants admit the indebtedness, but allege a renunciation of the provisions of the will, and also that such debts were provable claims in bankruptcy, and that he was discharged therefrom. Defendants also allege that the pur-

ported mortgage and assignments were invalid because of the provision in the will against incumbrances.

Intervenors allege an estoppel against the renunciation by an acceptance of the will by Forest E. Law.

The lower court found in favor of plaintiff and subjected the property to the rights of the intervenors. Hence the appeal.

■■■ I. Appellants contend that because Forest E. Law in 1934 filed a renunciation of the provision of his father's will, he necessarily derived no interest in the estate. It may be the rule that a person can renounce the provisions of a will in his behalf. In re Estate of Stone, 132 Iowa 136, 109 N. W. 455, 10 Ann. Cas. 1033; Schoonover v. Osborne, 193 Iowa 474, 187 N. W. 20, 27 A. L. R. 465; Lehr v. Switzer, 213 Iowa 658, 239 N. W. 564; In re Estate of Murphy, 217 Iowa 1291, 252 N. W. 523.

The rule there stated, however, is limited to cases where no acceptance of the provision of the will was made by the beneficiary. They all contain statements similar to those contained in Lehr v. Switzer, 213 Iowa 658, 661, 239 N. W. 564, 566, wherein this court said:

"We find nothing in the record that estops Wesley from filing said renunciation."

In Schoonover v. Osborne, 193 Iowa 474, 480, 187 N. W. 20, 23, 27 A. L. R. 465, the court said:

"The evidence wholly fails to show any declarations by him * * *. He was not bound at his peril to inform appellee of his intention. * * * The evidence wholly fails to support the plea of estoppel."

In the instant case, however, the evidence shows several distinct acts on the part of Forest E. Law, showing an unequivocal acceptance of the terms of the will, long prior to the filing of his renunciation. In the first place, in 1929, he and his wife conveyed to others all of his interest in Lot No. 1, Block 25, of the original town of Greenfield, as described in the will, in exchange for a similar interest in *Lot 5, Block 27,* of the original town of Greenfield. On March 1, 1931, he and his wife executed to W. W. Sissell, one of the intervenors, a real estate mortgage on his life estate in the property in question to secure the payment of a promissory note of $1,050. On April 1, 1931, he also made an assignment of his interest in the estate to W. W. Selvy, as se-

curity for a debt. On the same date he also made an assignment of his interest in the estate to Wilbur J. Bridges to secure an indebtedness. On April 10, 1931, he made a similar assignment to Jay E. Howe. These several assignments were all made in March, 1929, and April, 1931, and years prior to the renunciation.

In the mortgage and in each of the assignments hereinabove referred to, Forest E. Law covenanted that "his life estate is clear of all liens and incumbrances whatsoever, except a prior life estate preceding ours in Mary E. Law, that we have a right to make this assignment and we do herein warrant title against all persons whomsoever, and we direct the trustee, if one, to pay over the net income of the above life estate to the assignees till their debt is paid in full, it being our intent to pledge the income of said life estate." This covenant was in substance made in writing by Forest E. Law in all of the instruments hereinabove referred to.

It is our conclusion that the defendant, Forest E. Law, by his acts in making the mortgage and assignments of the interest granted him under the will, clearly showed an acceptance of the provisions thereof, and by such acts the defendants are now estopped from claiming any benefit from the renunciation alleged.

II. Appellants also contend that the estate or interest of Forest E. Law in his father's estate was not vested and is, therefore, not subject to alienation or incumbrance by him. Under the decree of court entered in the action for the construction of the will, it was held that Forest E. Law had a life estate in the property of William J. Law, subject only to a life estate therein of Mary E. Law, his mother. This decree was never appealed from and is, therefore, binding upon the parties herein, and under it Forest E. Law had a life estate in said property subject to a previous particular estate in his mother for life.

But appellants contend that this estate or interest was not a vested, but a contingent, estate; and the ever perplexing question of what is a vested remainder or interest is, therefore, presented.

"No definitions ever have been or ever will be given which will relieve all cases from doubt" upon this question. 69 C. J. 617; In re Washburn's Est., 11 Cal. App. 735, 106 Pac. 415.

"A vested remainder is a remainder limited to a certain person and on a certain event; so as to possess a present capacity to take effect in possession should the possession become vacant; * * * The chief characteristic which distinguishes a vested from a contingent remainder is the present capacity to take effect in possession should the possession become vacant, and the certainty that the event upon which the vacancy depends will happen sometime, and not upon the certainty that it will happen or the possession become vacant during the lifetime of the remainder-man. In the case of a vested remainder there is a person in being ascertained and ready to take, who has a present right of future enjoyment which is not dependent upon any uncertain event or contingency while the case of a contingent remainder the right itself is uncertain. * * * As a general rule however, remainders to ascertained persons to take effect in possession upon the termination of the preceding estate are vested, and are not rendered contingent by the uncertainty as to the time of enjoyment, or the uncertainty as to whether the remainderman will outlive the preceding tenant or the remainder ever take effect in possession." 40 Cyc. 1664, 1665.

The foregoing rule is similarly stated in Vol. I, page 215, in Fearne on Remainders, where the author says:

"The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent."

Likewise, in Tiedeman on Real Property, page 396, it is said:

"Not only will the mere uncertainty of enjoyment not make the remainder contingent, but the remainder will be a good vested one, although it may be absolutely impossible for the remainderman ever to enjoy the possession of it."

This rule is also announced in Archer v. Jacobs, 125 Iowa 467, loc. cit., 475 and 479, 101 N. W. 195, 197, where this court says:

"Generally speaking, when there is a person in being who would have an immediate right to the possession of the lands,

should the life tenancy now terminate, such person has a vested remainder. If, however, something more than the duration of the life tenancy stands between the remainderman and the right to immediate possession—if there be some unperformed or unfulfilled contingency which would prevent his taking possession, were the life tenancy now to terminate—then his remainder is contingent. In other words, 'it is the present capacity of taking effect in possession if the possession were now to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder.' * * *

"It is next said that the remainder is contingent because 'there is no certainty that * * * George Walling or William * * * Walling * * * will survive their mother. There is no certainty that they will have issue, or, if they have issue, that such issue will survive Mrs. Walling.' But none of these contingencies affect the vesting of the remainder in the sons, as the only representatives in being of the class to which the remainder is given. It is true, the will is open to such construction that the remainder vested in the sons of Mrs. Walling may be divested by their death pending the continuance of the life estate; but, as will be noted by reference to cases last above cited, and many others to the same effect, this does not render the remainder contingent, for up to the last moment of their lives their capacity to take the possession, were it to become vacant, is unimpeachable. Thaw v. Ritchie, 136 U. S. [519] 546, 10 S. Ct. 1037, 34 L. Ed. 531; Dodd v. Winship, 144 Mass. [461] 464, 11 N. E. 588; Kansas City Land Co. v. Hill, 87 Tenn. 589, 11 S. W. 797, 5 L. R. A. 45; Pennsylvania Ins. Co.'s Appeal, 109 Pa. 489, 1 A. [82] 83. As far as the will attempts to limit any interest to children not yet in being, it is uncertain both as to the event and to the person, and such interest is therefore clearly contingent; but, as far as it limits the remainder to persons now in being, and ready to take if the possession become vacant during their lifetime, it is vested. 2 Fearne, Rem., Sec. 180.''

**▋▋▋** The evidence in this case shows that the devise to Forest E. Law definitely grants to him a life estate in the property in question subject only to a particular estate for life in his mother. The mother is still living, but Forest E. Law is also living. It is certain that if his mother died before him, he

would come into the possession of the property. It is, there-
fore, our conclusion that the estate granted to Forest E. Law is
a vested estate and as such is subject to transfer, alienation, or
incumbrance by him.

It may also be said that notwithstanding the character of the
estate, this court has held that the interest of a devisee may be
transferred or incumbered whether the interest be vested or con-
tingent. McDonald v. Bayard Sav. Bank, 123 Iowa 413, 98 N.
W. 1025; McNair v. Sockriter, 199 Iowa 1176, 201 N. W. 102;
Saunders v. Wilson, 207 Iowa 526, 220 N. W. 344, 60 A. L. R.
786; Noonan v. State Bank, 211 Iowa 401, 233 N. W. 487. For
further consideration of the subject, see 48 A. L. R. 786.

In McDonald v. Sav. Bank, 123 Iowa 413, loc. cit. 415 and
416, 98 N. W. 1025, 1026, this court said:

"The appellants' counsel have discussed at length * * * the
question whether the plaintiffs, at the time of executing the quit-
claim deed, had an interest in the land which could be conveyed
* * *, while counsel for appellees contend that section 2914 of
the Code obviates all of the 'difficulties growing out of the dis-
tinctions which have been established by judicial constructions
between such estates as were alienable and such as were not.'
Section 2914 [now section 10042 of the Code of 1931] is as fol-
lows: 'Every conveyance of real estate passes all the interest of
the grantor therein, unless a contrary intent can be reasonably
inferred from the terms used.' 'An interest' in land is the legal
concern of a person in the thing or property, or in the right to
some of the benefits or uses from which the property is insepara-
ble. * * * It may be conceded for the purposes of this case that
the plaintiffs, at the time of making the quitclaim deed, were con-
tingent remaindermen, having only a possibility of ever coming
into possession; but, however remote and uncertain this remain-
der may have been, there was still a possibility, coupled with an
interest, which might at some future time ripen into an estate.
1 Tiffany's Real Property, 306. At the time the deed was exe-
cuted, James McDonald was unmarried and without issue. If
he died without issue, and the plaintiffs survived him, they would
immediately come into possession of the estate under the provi-
sions of the testator's will. True, this contingency might never
happen, but there was a possibility that it might; and this pos-

sibility created, in our judgment, a contingent interest or concern in the land which existed at the time of the conveyance.''

In Noonan v. State Bank, 211 Iowa 401, loc. cit. 403, 233 N. W. 487, 488, this court said:

''Could the plaintiff 'by any means have transferred' his interest in this property? We have settled this question in the case of McDonald v. Sav. Bank, 123 Iowa 413, 98 N. W. 1025, where we held, in fact, that the contingent interest of a remainderman is such a present and existing one as to be susceptible of conveyance by deed. We again recognized this doctrine in McNair v. Sockriter, 199 Iowa 1176, 201 N. W. 102, and Saunders v. Wilson, 207 Iowa 526, 220 N. W. 344, 60 A. L. R. 786. This seems to be the general rule as to rights under contingent remainders.''

For the reasons hereinabove expressed, it is our conclusion that the mortgage and assignments referred to are valid and constitute a lien against the interest of Forest E. Law in the property in question.

 III. Appellants also contend that the mortgage and assignments executed by Forest E. Law were invalid because of the testamentary provision that ''No mortgages or liens can be put on this property.''

It is a well settled rule of law that where a will provides for an absolute passing of a certain interest in property and contains a provision against incumbrance or alienation, the latter provision is invalid.

The will in this case devised and bequeathed a life estate to Forest E. Law, subject to a previous life estate in his mother. This provision was definite, certain and absolute, and gave him a life estate subject only to a particular life estate given his mother. The provision against mortgages or liens being inconsistent with the previous absolute interest granted to Forest E. Law is, therefore, invalid. McCleary v. Ellis, 54 Iowa 311, 6 N. W. 571, 37 Am. Rep. 205; McCormick Harvesting-Mach. Co. v. Gates, 75 Iowa 343, 39 N. W. 657; Davidson v. Auwerda, 192 Iowa 1338, 186 N. W. 406; Goodman v. Andrews, 203 Iowa 979, 213 N. W. 605; Putensen v. Dreeszen, 206 Iowa 1242, 219 N. W. 490.

For an interesting note on the validity of provisions creat-

ing a legal estate prohibiting incumbrances and alienation, see 80 A. L. R. 1007, and 80 A. L. R. 1019.

In McCormick Harvesting-Mach. Co. v. Gates, 75 Iowa 343, 345, 39 N. W. 657, 658, this court said:

"If the power to alienate is restricted, the estate ceases to be an absolute one, whether it be for life or in fee-simple. In this respect there is no difference in the two estates; both are absolute, or neither exists."

It is our conclusion that an absolute interest or estate was granted to Forest E. Law, and, as such, it cannot be subjected to provisions against incumbrances or alienation, and that such provisions are, therefore, invalid.

■■■ IV. The only other question remaining is the effect of a discharge of Forest E. Law in bankruptcy. The plaintiff and intervenors, however, are not attempting to secure, and do not ask for any personal judgment against Forest E. Law, but are only attempting to reach the property which they contend is part of the bankrupt estate, and to establish and enforce the lien of their mortgage and assignments thereon.

For the reasons hereinabove expressed, it is our conclusion that the property devised and bequeathed to Forest E. Law is now in plaintiff, as trustee in bankruptcy, and is subject to the liens of the mortgage and assignments made to intervenors by Forest E. Law.

It is, therefore, our conclusion that the judgment and decree of the lower court is right, and the same is hereby affirmed.— Affirmed.

ANDERSON, PARSONS, DONEGAN, STIGER, and SAGER, JJ., concur in opinion.

RICHARDS, C. J., and HAMILTON and MITCHELL, JJ., concur in the result.